W. W. STROUPE et al., Partners, etc., *Appellees*, v. MARY
LEE HEWITT et al. (MARY LEE HEWITT, *Appellant*).

No. 18,155.

SYLLABUS BY THE COURT.

1. PLEADINGS—*Parts Stricken Out—Not Prejudicial.* An order
striking out parts of an answer but which leaves it sufficient
to present all proper defenses and counterclaims is not preju-
dicially erroneous.

2. WRITTEN CONTRACT—*Exchange of Property—Time of Taking
Effect Fixed by Parol Agreement.* Evidence of a parol
agreement is admissible to prove that a written contract for
the sale and exchange of property, signed and deposited in a
bank, should not take effect until one of the parties has had
an opportunity for five days to test the truthfulness of repre-
sentations made concerning the property of the other to be
exchanged, when such oral agreement does not contradict any
stipulation in the writing.

3. TRIAL—*Rulings upon Testimony.* Rulings upon testimony
are reviewed and held not to prejudice substantial rights.

4. —— *Instructions.* Instructions are examined and held to
fairly state the theories of the parties and to clearly submit
the issues.

5. CONTRACT — *Exchange of Property — Fraud — Measure of
Damages.* The measure of damages in actions for fraud and
deceit in the sale of property as held in *Speed v. Hollings-
worth,* 54 Kan. 436, 38 Pac. 496, is followed.

Appeal from Sedgwick district court, division No. 2.
Opinion filed July 5, 1913. Affirmed.

*E. L. Foulke, C. A. Matson,* both of Wichita, *Tom
Williams,* and *G. Williams,* both of Siloam Springs,
Ark., for the appellant.

*Kos Harris, V. Harris, D. M. Dale, S. B. Amidon,
Jean Madalene,* and *B. F. Hegler,* all of Wichita, for
the appellees.

The opinion of the court was delivered by

BENSON, J.: This is an action for an assessment of damages and for the cancellation of a note and mortgage for alleged fraud and deceit in the sale and exchange of property. The defendant denied the fraud and pleaded the note and mortgage in a counterclaim, and sought recovery against the plaintiffs thereon. The jury found for the plaintiffs and assessed damages exceeding the amount of the counterclaim.

At the time of the exchange referred to the plaintiffs owned a grocery stock and store building and other real estate in Bartlesville, Okla., and the defendant's husband, E. J. Hewitt, owned the horses, carriages and other equipment of a livery business which he was carrying on at Wichita. E. J. Hewitt and the plaintiffs met at Wichita, where the plaintiffs looked over the livery stock. They then went to Bartlesville and looked over the grocery and other property there, and on October 22, 1909, signed a written agreement for the exchange and deposited it with forfeit money in a bank. The evidence tended to prove, and in view of the verdict it must be taken as true, that to induce the plaintiffs to enter into the agreement Hewitt made false and fraudulent representations as alleged, concerning the receipts from the livery business for the preceding three months, and of the daily income from the business. On the trial the plaintiffs were allowed to show that before the contract was signed, and as a condition upon which it should take effect, it was agreed that the plaintiffs should have an opportunity for five days to test the truth of the representations concerning the livery business, and for that purpose one of them went to Wichita to make observations. While this investigation was being made Mr. Hewitt caused his drivers and other employees to make untrue and exaggerated reports of receipts from hack and livery service. Rigs were sent out on the streets that

were not ordered, and were returned without having been put to service, and fictitious entries were made upon the books. By such devices the returns of the business were padded, and a false showing of business was made, culminating in a false memorandum of receipts presented to Mr. Stroupe, who was taking the observations. By these fraudulent means the plaintiffs were induced to believe that the previous representations were true, and relying thereon they caused their deeds, which had been deposited with the agreement, to be delivered, and then on October 28 or 29 made and delivered their promissory note for $3000, which was the difference agreed upon in the exchange, together with a mortgage upon the livery stock to secure it. By request of Mr. Hewitt these securities and the deeds to the Bartlesville real estate were made to Mrs. Hewitt, the defendant. Mr. Hewitt was joined as a defendant with his wife in the petition, but was out of the state and was not served with summons. Mrs. Hewitt alone made the defense, and pleaded the counterclaim on the $3000 note.

A motion was made to make the answer more definite and certain, which was sustained by striking out certain parts. Complaint is made of this ruling. The answer as amended, however, was sufficient to present Mrs. Hewitt's defense and her claim to a recovery on the note, and it does not appear that any evidence was excluded that would have been admissible to prove any material allegations stricken out except proof of the value of the Oklahoma property. This evidence, however, was immaterial since no fraud on the part of the plaintiffs was alleged, and it was not competent under the rule of damages in such cases, which will be again referred to.

Error is assigned upon the admission of testimony of the oral agreement for the five days' test. It is argued that its admission was in violation of the rule which excludes parol evidence to vary or contradict a

written agreement. The contract, as before stated, was deposited in a bank and the conditions of the deposit were not stated in the writing. A contract can not be varied until there is a contract, and there is none until it takes effect. Evidence that a writing purporting to be an agreement is not to take effect until the happening of some event or the ascertainment of some fact may be received, not to contradict the writing, but to show when it took effect, or that it never took effect. (*State, ex rel. Jones, v. Chamber of Commerce,* 121 Wis. 110, 98 N. W. 930; *Ware v. Allen,* 128 U. S. 590; *Benton v. Martin,* 52 N. Y. 570; *Stiebel v. Grosberg,* 202 N. Y. 266, 95 N. E. 692, 36 L. R. A., n. s., 1147, and note.) This subject is elucidated in sections 2408, 2410 and 2435 of volume 4 of Wigmore on Evidence.

The plaintiffs' deeds were held in the bank with the contract until they could test the truth of Mr. Hewitt's representations. The mortgage in question had not yet been executed. The agreement for the test was a condition upon which the writing should take effect, and was not contradictory of its terms.

The defendant offered the testimony of Mr. Hewitt to prove the circumstances attending the transfer to her of the $3000 note by the witness. The witness was allowed to testify that the plaintiffs told him they wanted to borrow the $3000 they were to pay in exchange, and that he told them he would get it from his wife, and that he considered it a safe loan; that they did get it from her on the note and mortgage in suit, which he sold to her; and that she had no interest in the livery business, and knew nothing of the trade until after the transaction was completed. He was then asked why he advised his wife to loan the money, but was not allowed to answer. The defendant complains of this ruling, but without good grounds. His reason for advising her to loan the money, if she did loan it, was immaterial. Upon the same subject Mrs. Hewitt

was allowed to testify that she owned the $3000 note and received it from her husband a few days after it was made; that she first learned that the deeds to the Bartlesville property were taken in her name when her husband came home from that place and told her. She was not allowed to answer a question inquiring what she had paid for the note, or whether she had paid anything for it. An objection was sustained on the ground that the question called for a communication between husband and wife. Concerning the same subject another witness testified that she had heard a conversation between Mr. and Mrs. Hewitt in which Mr. Hewitt told his wife that the loan was a good one, bearing good interest, with good security, and that she told him she would take it. Conceding that the question objected to was proper and that the answer did not call for a communication between husband and wife, the error in rejecting it was not prejudicial. The substance of the transaction was stated by both of them, and their conversation was also testified to by a witness produced by the wife. Considering all the evidence relating to this transaction, and the instructions relating to her rights as a holder of the note and mortgage, it appears that the excluded testimony was relatively unimportant. As a ground of error the ruling referred to must be disregarded. (Civ. Code, § 581.) Other minor objections relating to evidence have been considered, but do not require comment.

Complaint of the refusal to give instructions requested will be briefly referred to. One of them was that no representations made by Mr. Hewitt after the parties reached an agreement at Bartlesville could be considered. If the purpose of this request was to exclude evidence of the conduct of Mr. Hewitt during the time of the test, it was rightfully refused, for that evidence was competent for reasons already stated. Besides, the representations relied upon were made before the agreement was placed in the bank. What was said

and done by Hewitt afterwards related to the investigation, and the condition upon which the contract was signed and deposited, and the court carefully informed the jury that representations to be considered as the basis of the action were those made before the delivery of the contract. Other proposed instructions were to the effect that Mrs. Hewitt must have had notice of the fraud of her husband, if any, before the plaintiffs could recover. These requests suggest the defendant's theory of the case, which was that she stands in the relation of an innocent holder for value. The court submitted that theory in the following instruction:

"If you find that the defendant, Mary Lee Hewitt, loaned to the plaintiffs the sum of $3000.00 as evidenced by the note for $3000.00 and the chattel mortgage made to secure the same, then you are instructed that as to the said note for $3000.00 you should find for the defendant, Mary Lee Hewitt, regardless of the fact as to whether any fraudulent representations were made by E. J. Hewitt to the plaintiffs for the purpose of inducing the plaintiffs and E. J. Hewitt to exchange properties as alleged in the petition. The fact as to whether or not Mrs. Hewitt loaned the plaintiffs the sum of $3000.00 may be proven by the circumstances appearing in evidence in the case."

The court also instructed the jury, in substance, that if they found that the false representations were made as alleged and the exchange was effected in reliance upon their truthfulness, that plaintiffs had thereby suffered damages, that Mrs. Hewitt had no part in the trade, and that the plaintiffs received no consideration from her, but that the securities and conveyances were made to her at her husband's request in furtherance of his design to defraud and that he acted as her agent in taking them in her name, then the plaintiffs were entitled to recover.

The two instructions in connection with others fully and fairly covered all aspects of the case and clearly presented the respective claims of the parties, submit-

ting to the jury the issue upon which the defendant relies. The defendant did not fail from any omission of the court in properly submitting the issues, but because of the adverse finding of facts by the jury.

The defendant contends that an erroneous measure of damages was adopted; which excluded testimony that ought to have been received and resulted in an unjust verdict. The rule adopted, however, and declared in the instructions, was that announced by this court in *Speed v. Hollingsworth,* 54 Kan. 436, 38 Pac. 496, that is, the difference between the real value of the property received and what it would have been worth had the representations been true. It is argued that this rule should not be applied here because this was not a sale but an exchange of property. It was both. In the exchange the plaintiffs agreed to pay $3000 excess in value of the Hewitt property over that of the plaintiffs. In *Linscott v. Moseman,* 84 Kan. 541, 114 Pac. 1088, cited by the defendant, the vendor of real estate sought reparation for the refusal of the vendee to comply with his contract. He had two remedies. He might compel performance or claim damages for the breach. Had he sold for cash he could have received the purchase money, but the contract was wholly executory, and it was held that he should recover the difference in value in his favor of the property to be exchanged. Here the contract was executed. Hewitt had received the property that the contract provided he should receive, and neither he nor the plaintiffs claimed it was not as represented. The plaintiffs had received the property they were to receive, but it was not of the value that it would have been had Hewitt's representations, upon the faith of which it was taken, been true. There was no issue in the pleadings as to the condition or value of the property conveyed by the plaintiffs. Having received just what he agreed to receive, Hewitt, or one standing in his shoes, should credit upon the note any damages suffered by the plaintiffs from his false

Stroupe v. Hewitt.

representations concerning the property given in exchange. In deciding the Linscott case it was not intended to overrule the Speed case, or to disturb the settled rule of damages in actions for deceit.

It is contended that this is not an action for damages, but an equitable action for cancellation of the note and mortgage. All necessary averments for the recovery of damages, however, were contained in the petition. The alleged wrongdoer was out of the state, but the note was here in the hands of the defendant. Although cancellation was prayed for, the real object of the action was to ascertain the damages and have the amount applied upon or in satisfaction of that note. In the answer the note was pleaded and a recovery sought upon it. The issue thus tendered by the defendant authorized the application of the damages against the amount otherwise due upon it independently of the petition. The plaintiffs did not seek to rescind the contract. They sought an assessment of damages upon the executed contract, to be applied upon the note and mortgage. Looking through the forms to the substance of this controversy the district court so treated the case, and this appears to be in accordance with the spirit of the code and in furtherance of justice. Regarded in this light the correct measure of damages was applied.

The evidence was ample to sustain the allegations of fraud. The relation of the defendant to the securities which she sought to enforce was fairly submitted to the jury, no prejudicial error appears, and the judgment is affirmed.