No. 36,688

R. D. McKay, doing business as McKay Motor Company, *Appellee*, v. Orva E. Clark, *Appellant*.

(178 P. 2d 679)

Opinion filed April 5, 1947.

*William J. Wertz* and *Henry Martz*, both of Wichita, argued the cause, and *Vincent F. Hiebsch, Milton Zacharias, Eugene L. Pirtle, Fred Aley,* and *Garner E. Shriver,* all of Wichita, were with them on the briefs for the appellant.

*Arnold C. Todd,* of Wichita, argued the cause, and *E. Lael Alkire, Dale Kidwell, John J. Darrah* and *Robert B. Morton,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HOCH, J.: This case arose out of the purchase of a used automobile. The principal question is whether under the facts disclosed, the purchaser, appellant here, can avoid the provisions of certain written instruments—some of which were signed by both seller and purchaser—delivered to the purchaser at the time, or very soon after, the deal was agreed upon. The action was begun by the seller to recover an unpaid balance due on the car. The defendant filed a cross-petition to recover for property damage and personal injuries suffered in a car accident, alleging that the accident resulted from defective tires which the seller had fraudulently represented to be in good condition. In its answer to the cross-petition, the plaintiff set up the written instruments, presently to be considered. At the close of the trial, the court sustained plaintiff's motion for judgment on the pleadings and also sustained a demurrer to defendant's evidence in support of his cross-petition and gave judgment for the plaintiff. From those orders the defendant appeals.

We shall omit from the narrative many details not material to the question before us. Orva E. Clark, appellant, negotiated with appellee, the McKay Motor Company of Wichita, for purchase of a used car, his own used car to be traded in as part payment. Agreement was reached for purchase of a Dodge sedan at a price of $1,446.12, appellant's Dodge coupe to be taken in at $675, leaving a balance due of $771.12, for which amount appellant gave his check, drawn on a California bank. Shortly thereafter, appellant and his wife started for the Pacific coast and when they were near Kingman, Kan., one of the tires blew out. The car was overturned and badly damaged, and appellant suffered serious injuries. He im-

mediately wired to California stopping payment on the check. Payment being refused by the bank, action was brought by the motor company to recover $775.12—the amount of the check, plus protest fee. The defendant filed an answer and a cross-petition. In his answer he admitted the purchase of the car and that he had given the check and had stopped payment upon it. He denied, however, that he was indebted to the plaintiff for the reason that the plaintiff had secured the sale through fraud and deceit; that the plaintiff had represented that the tires were in good condition and free from defects when in fact they had many concealed defects all of which were known to the plaintiff but were not known to defendant; that by reason of this fraud and deceit the automobile was wrecked and he was seriously injured, and that by reason thereof, his damage and injuries were greatly in excess of the balance owed upon the car. In his cross-petition, the defendant alleged that the plaintiff had been engaged in the automobile business for many years and was familiar with the condition and value of used cars and the condition of tires; that on October 13, 1944, having accepted a position in Tacoma, Washington, he went to plaintiff's place of business and discussed the purchase of a used car suitable for pulling a house trailer on the trip to Tacoma; that he was shown a 1941 Dodge sedan which plaintiff represented to be in good mechanical condition with good tires, free from defects and in first class serviceable condition and safe for making the proposed trip; that the tires on the 1941 Dodge were "from a view from the side of the automobile, in such serviceable condition"; that he had no opportunity to inspect the tires further, and that relying upon plaintiff's representations, he agreed to purchase the sedan for $1,446.12, the plaintiff accepting defendant's old car at $675, and that he then gave the plaintiff his check for the balance of $771.12. He further alleged:

"That such representations made by the plaintiff to the defendant, which were oral, relative to the tires, as hereinbefore alleged, were material in the making of the sale in that the defendant would not have purchased the automobile in question had he not believed such representations to be true."

He then alleged that the tires were not in good, safe, serviceable condition and free from defects, but were in very bad condition and—

"Were so turned that the bad part of the tires were on the inside of the wheels and could not be detected without the wheels being taken off or on inspecting from underneath the automobile. That in thus practicing deceit and fraud in making false representations relative to the condition of the tires

as hereinbefore alleged, which condition of the tires was well known to the plaintiff, or should have been known by him, and was not known by this defendant, the said plaintiff procured a sale of the automobile in question to this defendant, as hereinbefore alleged. That all of said false and fraudulent representations were oral."

In the cross-petition, the defendant then recited facts about the accident, asserting that while they were driving at a speed of about thirty-five miles per hour, two tires blew out without warning, resulting in the damage and injuries heretofore mentioned. Averments as to the injuries and his subsequent illness and hospitalization need not be recited in detail. Defendant admitted that there was a balance due upon the contract of $771.12, but asserted that it should constitute a set-off against his claim for damages in the amount of $17,846.12.

The plaintiff filed a reply and an answer to the cross-petition. In its reply, the plaintiff denied that it or its employees had made any misrepresentations concerning the car, and alleged that the defendant had purchased it upon his own judgment and inspection after having examined it on different occasions and having driven it in and around the city of Wichita for a short time. In its answer the plaintiff repeated its denial of any misrepresentations, fraud or deceit, set out at some length the circumstances under which the car was bought by the defendant and averred that following the negotiations the contract was "reduced to writing and said original sales and purchase agreement was duly executed by the defendant and the plaintiff, through the plaintiff's agent and employee." A copy of this sales agreement was attached and made a part of the answer. Plaintiff further alleged that "at the time when the aforesaid sales and purchase agreement was entered into between the plaintiff and the defendant a certificate of transfer of the aforesaid 1941 Dodge used sedan, as provided under the provisions of the maximum price regulation No. 540 of the office of price administration was executed by the plaintiff and defendant concerning the sale and purchase of the aforesaid 1941 used Dodge sedan." A copy of this certificate of transfer was also attached and made a part of the answer.

The plaintiff further alleged that under the provisions of the certificate of transfer, the 1941 Dodge was sold "under what is known as the maximum price for said vehicle with dealer's warranty"; that in keeping with this agreement "the plaintiff issued unto the defend-

ant the dealer's used car service policy or warranty as specified by the Office of Price Administration M P R 540 and the defendant accepted of and from the plaintiff the aforesaid used car warranty No. M P R 540, and signed and delivered a receipt for said dealer's warranty policy unto the plaintiff." A copy of this "service policy or warranty" was attached to the answer.

In the answer it was further alleged that after these transactions had been completed, the defendant drove the car away, but on the following day brought it back requesting that the front wheels be balanced and that the tires and wheels on the front end of the car be shifted to the rear end; that this request was complied with and that this work of shifting the wheels was done under the general inspection of the defendant and that he "had full opportunity to fully inspect the tires and conditions thereof upon said car." In the answer it was specifically denied that the accident and injuries complained of were in any way due to the plaintiff's negligence, misrepresentations, fraud, or breach of warranties.

To the plaintiff's answer to the cross-petition, the defendant filed a reply, unverified, in which he first denied that he signed the sales and purchase agreements and then asserted that if he did sign them, he did so *subsequent to the purchase* of the automobile and subsequent to the representations made by the motor company and its employees and "that *the signing of said sale orders or other papers were not part of the contract of purchase* of the automobile in question between the plaintiff and defendant, but were signed on the representation made by the agents and servants of the plaintiff, R. D. McKay Motor Company, that it was necessary to comply with certain regulations of the O. P. A., and that *such signing was subsequent to the purchase and subsequent to the time the plaintiff*, R. D. McKay Motor Company, *accepted the check* in full payment of the purchase price of the automobile." (Italics supplied.)

On these pleadings, the case went to trial. Upon examination of the pleadings, the court ruled that the defendant had admitted the facts with reference to the signing of the check and that the plaintiff was entitled to judgment upon his petition subject to the defendant's rights as determined upon the defendant's cross-petition, the answer thereto, and the reply. Thereupon the plaintiff moved for judgment upon the pleadings. This motion was overruled temporarily, with final ruling reserved. Upon conclusion of defendant's evidence, the plaintiff demurred to the evidence. Final ruling upon the demurrer

being reserved, plaintiff introduced its evidence, and after instructions not here in issue, the case went to the jury. After being out for a couple of days, the jury reported that it was not able to agree upon a verdict, and was discharged. Thereupon, plaintiff again renewed its motion for judgment on the pleadings and its demurrer to the defendant's evidence, both of which were later sustained, and judgment was entered for the plaintiff for $846.65, being the balance due on the car, together with interest. This appeal followed.

In considering first the motion for judgment upon the pleadings, we must note precisely the situation presented. First, the execution of the written sales contract, the certificate of transfer, and the receipt by appellant of the policy, must be accepted as true under the provisions of section 60-729, G. S. 1935, having been set up in appellee's answer and no verified denial having been made by appellant. Moreover, appellant does not deny that he signed the instruments. Second, appellant does not allege that he was induced to sign the written instruments as a result of fraudulent representations as to their content, or with any misunderstanding of the provisions they contained, or that the appellee misled him into thinking that they carried a warranty as to the condition of the tires. Appellant's position, disclosed by the pleadings, is that these written instruments constituted a separate and distinct transaction, entirely divorced from the prior, oral contract of purchase. His only reference to the written instruments is to be found in his reply, wherein he asserts that if he signed them, they were signed subsequent to the purchase of the car and upon the representation that their signing "was necessary to comply with certain regulations of the O. P. A.," and subsequent to delivery of a check in full payment of the purchase price. We cannot construe the allegation that he signed because he was told the O. P. A. regulations required it, into an allegation of fraudulent representation as to their content.

It is impossible to accept appellant's view, embodied in his reply, that "the signing of said sale orders or other papers were not part of the contract of purchase." Clearly the preliminary negotiations and the signing of the instruments were part of the same transaction. In the first place, it was necessary under the then existing law for sellers and buyers of used cars to execute such instruments setting forth compliance with O. P. A. regulations as to the sale price *et cetera*. Appellant must be charged with knowledge that the sale could not be lawfully completed otherwise. Moreover, if the writ-

ten instruments constituted a transaction independent of a sale already consummated, they have no significance, being without consideration. Appellant does not attack them upon that ground.

Extended citation of authorities is not necessary to support some well-established rules of law that are here applicable. The first is the general rule that when preliminary negotiations lead to the signing of a written contract, such negotiations are merged into the written document, from which the terms of the contract are to be determined. (12 Am. Jur. 756, 757, and cases cited; 17 C. J. S. 750, 872. Restatement, Contracts, Vol. 2, § 446; *Setchell v. Reed*, 153 Kan. 818, 820, 113 P. 2d 1050; *Arensman v. Kitch*, 160 Kan. 783, 165 P. 2d 441.) Another elementary and related rule is that parol evidence is not admissible to vary the terms of a written instrument. (32 C. J. S. 784, § 851; 20 Am. Jur. 958, § 1099.)

One exception to the latter rule—if it can properly be regarded as an exception—is that a written contract may be voided on the ground that the execution of the contract was induced by fraud. (12 Am. Jur. 636-639; 17 C. J. S. 505, *et seq.*) But the mere fact that a party who signed a written contract did not know its contents is not alone sufficient to permit him to avoid it. (12 Am. Jur. 628.) And, in this case, as heretofore noted, the appellant does not plead that the written instruments should be set aside on the ground that he was induced to sign them by fraudulent representations as to their content. He does not plead that the written contract should be voided because of fraud. He asserts only that the written instruments are not a part of the transaction and seeks to recover under an oral contract unaffected by them.

This brings us to an examination of the written instruments. They are quite lengthy and need not be set out in full. First, as to the "Used Car Sales Order." This instrument, signed both by appellant and appellee, sets out descriptions of the car which the appellant was buying and of the one which he was trading in—serial numbers, motor numbers, license numbers *et cetera*. It contains terms as to title, right of possession, terms of payment *et cetera*. Then it contains these paragraphs:

"It is understood that I have examined said motor car and accept it in its present condition and agree that there are no warranties or representations expressed or implied, not specified herein, respecting the goods hereby ordered."

and—

"It is agreed that no change, alteration, interlineation, or verbal agreement of any kind shall be effective to change, alter or amend the printed terms of this agreement."

Just above the signatures appear these words: "Type of Guarantee—Life Time."

The certificate of transfer of the car to appellant, also signed by both parties, contains—in addition to formal recitals—the following provisions:

"For sales between persons who are not dealers and sales by a dealer to a person who is not a dealer. This certificate is to be prepared by the seller and signed by both the seller and the purchaser. The purchaser must present this certificate to the local War Price and Rationing Board when he applies for gasoline rationing coupons for the purchased vehicle. ·

. . . . . . . . . .

"The undersigned hereby certify that they have complied with the requirements of Maximum Price Regulation No. 540. Maximum Prices for Used Passenger Automobiles, and that the actual sale price of the vehicle is not more than the maximum selling price as established by Maximum Price Regulation No. 540, and further certify that no payment directly or indirectly was or will be made in addition to the actual sale price of the vehicle as shown on this certificate."

Also, upon this certificate of transfer, the following appeared among other items:

"3. Maximum price for vehicle without dealer warranty: (Total of 1 and 2a, b and c)........................................ 1,145.00
4. Maximum price for vehicle if sold with dealer warranty........ 1,431.00
5. State and local taxes which may be collected by seller.......... 15.12
6. Actual sales price for vehicle including taxes................. 1,446.12"

At the time the two instruments above described were signed by the parties, the appellee handed to the appellant a policy which was headed

"LIFETIME

USED CAR                          SERVICE POLICY"

Appellant signed a receipt for this policy. A considerable portion of the policy relates to rights of the owner to have inspection of the car at certain periods, to receive, free, certain car lubrications, to receive certain discounts on labor at the shop of the seller, and discounts on car parts purchased from the seller.

We come to the pertinent portions of the policy relating to warranty. Under a heading—

"Terms and Conditions of Policy
Warranty"

appear the following provisions:

"The used car described above is hereby warranted to be in good operating condition, and to remain in such condition under normal use and service for a period of 30 days after delivery, or 1,000 miles, whichever may first occur.

. "This warranty does not extend to tires, tubes, paint, glass, upholstery, or to any repairs or replacements made necessary by misuse, negligence or accident."

It is well settled that where a written contract is evidenced by several instruments, it is not necessary that all instruments be separately signed by the parties. It is sufficient if the unsigned documents are clearly identified or referred to and thus made a part of the written instrument or instruments which are signed by the parties. (37 C. J. S. 661 [b]; 49 Am. Jur. 697, § 393; Restatement, Contracts, Vol. 1, § 208 [b] [ii]; Riffel v. Dieter, 159 Kan. 628, 638, 157 P. 2d 831.)

It cannot reasonably be said that the policy was not sufficiently identified in the signed instruments. In the first place, as already noted, there appeared immediately above appellant's signature these words: "Type of Guarantee Life Time." The policy which was then handed to him and for which he gave a receipt was headed "Lifetime." Again, in the certificate of transfer signed by appellant, appears the following:

"If you are a dealer selling with a warranty, did you deliver to the purchaser a copy of the warranty? Yes."

The delivery of no other warranty was pleaded nor is any contention now made that any other warranty was delivered.

Appellant calls attention to the fact that on the certificate of transfer are shown the O. P. A. maximum selling prices of the car "with dealer warranty" and "without dealer warranty," and that he paid the price with the warranty which was $286 more than without warranty. Since the sales order provided that there were no warranties except those specified, and since the sales order itself contained no specific warranties, it is then argued that appellant got no dealer's warranty at all for his $286, if appellee's position is upheld. That result does not follow. The sales order did incorporate, by identification, the policy, and by no means can it

be said that the policy carried no dealer's warranty. It is true that the policy specifically excluded warranty as to tires and some other items, but it did contain a warranty that the car was in "good operating condition," and that it would remain in such condition under normal use and service for thirty days or for one thousand miles. This covered a very substantial dealer's warranty —a warranty that the motor, the drive, the brakes, the chassis, the wheels *et cetera*, were in good operating condition when the car was sold.

It is clear that under the terms of the written contract, into which all prior oral negotiations were merged, there was no warranty by appellee as to the condition of the tires. Appellant does not allege that he signed the contract under any misrepresentation of its terms nor assert that he should not be bound by it because its execution was induced by fraud. Under the issues as framed by the pleadings, appellant is bound by its terms, and the motion for judgment upon the pleadings was properly sustained. To hold otherwise would do violence to rules of law long established.

This conclusion makes it unnecessary to consider the demurrer to the evidence, which was substantially in harmony with the pleadings. It may be added that we have, of course, given no consideration to the question of whether, if the written contract could be discarded, there was evidence of fraudulent representations which would require submission of the case to the jury.

The judgment is affirmed.

HARVEY, C. J., SMITH and PARKER, JJ., dissent.