No. 37,735

FRED CHERRY, doing business as CHERRY REALTY COMPANY, *Appellee*, v. EDWARD E. JOYCE, *Appellant*.

(213 P. 2d 1010)

Opinion filed January 28, 1950.

*Homer V. Gooing,* of Wichita, argued the cause, and *Howard T. Fleeson, Wayne Coulson, Paul R. Kitch, Dale M. Stucky* and *Donald R. Newkirk,* all of Wichita, were with him on the briefs for appellant.

*Richard K. Hollingsworth,* of Wichita, argued the cause, and *Clarence R. Sowers,* of Wichita, was with him on the briefs for appellee.

The opinion of the court was delivered by

PRICE, J.: This was an action to recover a real estate broker's commission under a written listing agreement. At the conclusion of defendant's evidence the court directed the jury to return a verdict for plaintiff in the sum of $1,475. Motion for a new trial was overruled and judgment being entered upon the verdict, defendant has appealed.

At the outset it may be stated that defendant admitted the execution of the listing agreement but contended, both in his answer and oral testimony, that it was contemporaneously orally agreed between the parties such agreement would become valid and effective only upon plaintiff ascertaining for him information from the federal taxing authorities to the effect that the proposed sale could qualify as an installment sale for income tax purposes.

The written agreement was as follows:

"CONTRACT

"April 26, 1947

"To Cherry Realty Company:

"For and in consideration of One Dollar ($1.00) the receipt of which is acknowledged I hereby appoint you exclusive agent to make sale of the real property herein described as Section 16, Township 21, Range 31, Finney County, Kansas, for the price of $44,000.00 upon the following terms $22,000.00 cash, $22,000.00 secured by mortgage thereon for 5 years at 6 per cent, and you are hereby authorized to accept a deposit to be applied on the purchase price, and to execute a binding contract for sale on my behalf.

"In case the above described property is sold or disposed of within the time specified, I agree to make the purchaser a good and sufficient warranty deed to the same, and to furnish a complete abstract of title, if required; and it is further agreed that you shall have and may retain from the proceeds arising from such sale 5 percent commission on the $15,000. and 2½% on balance.

"This contract to continue until June 10th, 1947, and thereafter until terminated by me giving unto you as agent 10 days notice in writing.

"One-half of growing wheat crop to be delivered at market by

/S     Edw. E. Joyce."

Plaintiff testified that for several years he had been engaged in the real estate business in Wichita and that he first met defendant Joyce a few days prior to April 26, 1947; that on the latter date they had a general discussion concerning the sale of defendant's land in which defendant said he wanted $44,000 for it, that he wanted a quick sale, and that defendant gave him the legal description of it. That he then prepared the agreement and defendant read and signed it without objection; that about a week later defendant came into his office complaining that he wasn't making enough effort to sell the land; that he denied this accusation and told defendant he had advertised it in a Wichita newspaper and was making every effort to sell it; that on May 30, 1947, being Memorial Day, he drove Mr. and Mrs. Haiber of Halstead (who had come in to see him in response to the ad) and two friends of theirs out to Finney county to look over the land. There they met Joyce and the six of them inspected the land. That Haiber asked defendant if he wanted to sell and the latter remarked that he guessed he would have to. Plaintiff and his party then returned to Wichita. A few days later he drew up a contract of sale, Haiber and his wife signed it and he then mailed it by registered mail, together with Haiber's downpayment check for $5,000, to defendant. The latter did not reply, but about ten days later returned to Wichita, at which time he, Haiber and plaintiff all met at the latter's office. During this conversation defendant said he had been up to see the internal revenue officials about his income tax, that he had learned he would have to pay a tax on the total sale price in one year, rather than being able to spread it over a period of years, and therefore he could not afford to go through with the deal. Plaintiff testified this was the first time defendant ever had said anything about the matter of income tax; that Haiber then offered to pay him the full purchase price in cash, but defendant refused to go through with the deal and handed the contract and check back to Haiber, who then seemed somewhat provoked and tore up the check and threw it in the waste basket. Plaintiff recovered and preserved the check and it was introduced in evidence together with the agreement of April 26, 1947, and the contract of sale which Haiber and his wife had signed. He further testified that he had made demand of defendant for his commission but that payment had been refused.

Mr. Haiber, testifying in behalf of plaintiff, stated that when he met defendant at the farm in Finney county he said to him, "Mr. Joyce, I understand you want to sell your farm," and the

latter replied, "Well, I don't want to but I may have to." That they discussed a division of the growing wheat and defendant suggested it would be most convenient to him to be made at the elevator; that defendant said he would want the sale to be on the basis of one-half down with one-fifth of the remainder payable annually for five years with six percent interest, and that he, the witness, was ready, willing and able to buy it on those terms; that about a week later he met defendant and plaintiff in the latter's office in Wichita, at which time defendant said he had been to see the income tax authorities and that as it would cost him about $7,000 in taxes he could not afford to go through with the deal; that nothing was said about income taxes during their conversation in Finney county and that he didn't know what defendant meant when he said, "Well, I don't want to (sell) but I may have to." The witness further testified that he was ready, willing and able to pay all cash or buy the land on the terms suggested by defendant at the time the inspection of the land was made, but that defendant simply refused to go through with the deal on account of having to pay so much income tax on the sale price.

Defendant's demurrer to plaintiff's evidence was overruled by the court.

The defendant testified that he was sixty-one years of age; that he was a retired shop foreman and mechanic, had lived in Wichita since 1921; that he had had experience with real estate firms in Wichita and had bought and sold property other than that involved in the present litigation; that he first met plaintiff in the latter part of April, at which time something might have been discussed concerning his land; that on April 26, 1947, he and plaintiff discussed the sale of it and in this conversation plaintiff told him that during the current year he would only have to pay income tax on the amount he received as a down payment, but that he doubted the correctness of plaintiff's statement and so advised him; that he and plaintiff discussed and worked out a schedule of payments, being one-half down and one-fifth of the remainder payable annually for five years, and that he signed the listing agreement in question, but that before signing he said to plaintiff, "We want it understood —fully understood—that this part of this contract, if the income people have to collect on more than this half, this is no contract." That plaintiff said he would find out about the income tax matter and let him know right away. That when plaintiff and Haiber

were out in Finney county he, defendant, was all ready to go ahead with the deal but that he did not at that time discuss the matter of taxes with plaintiff as he just took it for granted plaintiff had checked on the matter and ascertained the law to be in his, defendant's, favor. That upon receiving the check and form of contract signed by Haiber he took the abstract of title to the property to Garden City and had it brought down to date and then returned to Wichita to contact plaintiff. On this occasion plaintiff was temporarily out of his office and in the meantime defendant went to the internal revenue offices to see the man who had prepared his income tax returns for several years, at which time he first learned the amount of tax he would have to pay in the event he sold the land in question. He then met plaintiff in the latter's office, at which time plaintiff admitted he had not ascertained what the law was with reference to the tax matters but insisted that "they can't collect on anything but that half because that is all you are receiving." That he told plaintiff he had just been to the revenue office and had learned differently and that under the circumstances he could not go through with the deal because of the large amount of tax he would be required to pay. That plaintiff then suggested they get in touch with the Haibers and later the four of them met in plaintiff's office, at which time the witness explained the situation to the Haibers. That Haiber seemed to understand and said, "I will just call the deal off" and then took the check from the desk, tore it up and threw it in the waste basket. Defendant further testified that he had not previously consulted his income tax man about the proposed sale for the reason that plaintiff had agreed to find out and he was just leaving it up to him. On recross-examination he admitted that the whole matter had been discussed between him and plaintiff before the listing agreement was signed.

The testimony of defendant was the only evidence offered in his behalf and plaintiff demurred thereto and moved to strike all evidence which in any way attempted to vary the terms of the written listing agreement of April 26, 1947. Plaintiff also moved for a directed verdict in his favor.

This demurrer and the two motions were sustained and under direction of the court the jury returned a verdict in favor of the plaintiff in the amount of $1,475.

Defendant's motion for a new trial was overruled. Judgment was entered upon the verdict and this appeal followed.

In view of defendant's admission of the execution of the listing agreement, the only question before us is whether he was entitled to show the alleged oral agreement pertaining to the ascertainment of facts by plaintiff concerning the income tax regulations.

He concedes the general rule to be that parol evidence is never admissible to vary or contradict the terms of a complete and unambiguous written agreement, but seeks to bring his position under the well recognized exception to the effect that such evidence is admissible, not to contradict the writing, but to prove that a writing purporting to be an agreement is not to take effect until the happening of some event or the ascertainment of some fact, and he relies on the cases of *Stroupe v. Hewitt,* 90 Kan. 200, 133 Pac. 562; *Little v. Liggett,* 92 Kan. 385, 140 Pac. 838, and *Mayse v. Grieves,* 130 Kan. 96, 285 Pac. 630.

In the Stroupe case, *supra,* which was an action to cancel a note and mortgage executed pursuant to a written agreement for the sale and exchange of property between the parties, the contract was placed in escrow in a bank but the conditions of the deposit, which in substance were that the contract was not to take effect until one of the parties should have five days in which to investigate the truthfulness of the representations made by the other party concerning the property to be exchanged, were not stated in writing. The court held that evidence of such oral agreement was admissible—not to contradict the writing—but to show when it took effect or that it never took effect.

In the Little case, *supra,* the court held the written agreement under consideration to be uncertain, ambiguous and also incomplete—and followed the holding in the Stroupe case, *supra,* in permitting the introduction of parol evidence to show that the written agreement was not to take effect until the ascertainment of some additional fact.

In the Mayse case, *supra,* in the course of the opinon, at page 100, the court commented on the fact that the contract in question was not only silent as to the condition of being able to get the money at a local bank or from another party, but it was also incomplete and inaccurate to the extent that neither party might wish to be bound thereby because it recited that the purchaser had paid a certain amount of cash for which the owner had acknowledged receipt, when in fact no money had been paid. The court quite properly held that where a written contract is incomplete or silent in some essential or

vital point incident thereto, parol evidence is admissible to aid in its construction.

On the other hand, plaintiff argues that the written listing agreement was complete in every detail, free from ambiguity, and that to admit evidence of the alleged prior and contemporaneous oral agreement is to permit defendant to come into court and say that the written contract does not mean what it says.

The force and effect of the written listing agreement is the vital question involved in this appeal. By its terms defendant appointed plaintiff his exclusive agent to sell the described land for a stated amount and on certain terms, and he authorized him to accept a deposit to be applied on the purchase price and to execute a binding contract of sale in his behalf. In turn, defendant agreed to execute a warranty deed and furnish an abstract of title, and then followed the provision relating to the commission due plaintiff. The contract was to be in force until June 10, 1947, and thereafter until terminated by defendant upon the giving of ten days' notice in writing. Is there any uncertainty or ambiguity about the agreement? By its terms was there anything remaining to be done?

The general rule that parol evidence is not admissible to vary or contradict the terms of a complete and unambiguous written agreement is elementary and is universally applied.

"It is a general principle that where the parties to a contract have deliberately put their engagement in writing in such terms as import a legal obligation without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the entire engagement of the parties and the extent and manner of their undertaking have been reduced to writing; in other words, the parol agreement is merged in the written agreement and all parol testimony of prior or contemporaneous conversations or declarations tending to substitute a new and different contract for the one evidenced by the writing is incompetent." (20 Am. Jur., Evidence, § 1099, p. 958.)

"It is a general rule that parol or extrinsic evidence is not admissible to add to, subtract from, vary, or contradict judicial or official records or documents, or written instruments which dispose of property, or are contractual in nature and which are valid, complete, unambiguous, and unaffected by accident or mistake. This rule, which is known as the parol evidence rule, is one of substantive law and not merely one of evidence; and it obtains in equity as well as at law." (32 C. J. S., Evidence, § 851, p. 784.)

In the case of *Guaranty Co. v. Grabske,* 111 Kan. 271, 207 Pac. 322, this court said:

"It is elementary that a written contract in itself complete and free from ambiguity cannot be altered or enlarged by showing prior or contemporaneous oral agreements where the writing purports to be a full expression of the agree-

ment. When parties have deliberately put their engagements in a written contract it is deemed to be the best and only evidence of their agreements, and it is not competent for one of them to assert or show that there were conditions or limitations of liability different from those specified in the writing. The indemnity contract in question is a complete instrument which purports to embody the conditions upon which the liability of defendant should depend. The pleaded oral agreement so closely relates to the subject matter of the writing as to be in fact a part of the transaction, and not only adds conditions not in the writing, but some of them are contrary to its terms and obligations. In such a case all prior or contemporaneous negotiations and understandings are deemed to be merged in the contract and must be determined from the writing itself."

See, also, *Gerlach-Barklow Co. v. Moore,* 118 Kan. 274, 234 Pac. 958; *Continental Supply Co. v. Morgan,* 133 Kan. 121, 298 Pac. 790; *Arensman v. Kitch,* 160 Kan. 783, 165 P. 2d 441; *McKay v. Clark,* 162 Kan. 653, 178 P. 2d 679, and *Frogge v. Belford,* 168 Kan. 74, 211 P. 2d 49.

Here we are not concerned with the weight and credence to be given defendant's evidence concerning the alleged oral agreement. That was a question for the jury in the event it was admissible. Our question is whether it tended to vary, qualify or in fact nullify the written listing agreement. If defendant's theory is correct there was no contract at all between the parties until plaintiff should ascertain from the federal taxing authorities that defendant would not have to pay tax on the full sale price in one year. In other words, defendant now contends the listing agreement does not mean what it says and is a complete nullity. He admitted the alleged oral understanding was prior or contemporaneous to the execution of the listing agreement, and following the general rule we hold that it was not competent for him to assert that there were conditions or limitations of liability different from those specified in the writing. The court did not err in striking such evidence.

And finally, it is argued the court erred in failing to sustain defendant's demurrers to plaintiff's petition and evidence. We think the petition was clearly sufficient to withstand the demurrer, and with respect to the demurrer to the evidence defendant's argument is based upon the proposition that as the contract itself provided plaintiff should retain his commission from the proceeds arising from the sale, then it clearly contemplated that he would be entitled to a commission only when and if a sale had been completed. The answer to this argument is that it was the defendant himself who blocked the sale, for all of the evidence clearly shows that

Haiber was ready, willing and able to purchase either for cash or on the terms set out in the agreement itself.

The lower court committed no error in removing from the jury's consideration the evidence of the alleged prior and contemporaneous oral agreement and in directing a verdict for the plaintiff. The judgment is therefore affirmed.