No. 38,852

V. W. BROWN, *Appellee,* v. C. D. BECKERDITE and CAMERON D. BECKERDITE, *Appellants.*

(254 P. 2d 308)

Opinion filed March 7, 1953.

*Fred Hinkle,* of Wichita, argued the cause, and was on the briefs for the appellants.

*Robert M. Baker,* of Ashland, argued the cause, and *J. V. Severe,* of Ashland, and *James A. Williams,* of Dodge City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: Plaintiff brought this action to recover possession of certain premises alleging that the same were unlawfully and forcibly detained by the defendants. This controversy presents the question whether parol evidence was admissible to show an oral contract made contemporaneously with a written contract. The trial court held that the evidence did not constitute a defense and rendered judgment for plaintiff, from which order defendants appeal.

Appellee, V. W. Brown, will hereinafter be referred to as plaintiff, and appellants, C. D. Beckerdite and Cameron D. Beckerdite, as defendants.

On March 1, 1946, plaintiff entered into a written agreement with the owners of the Potter Ranch in Clark County, whereby he leased the ranch for a period of ten years, beginning March 1, 1946, and ending March 1, 1956. Under the terms of the lease, the plaintiff was permitted to take in outside cattle for grazing purposes, but was prohibited from subleasing any part of the land.

Both plaintiff and defendants, being aware of the provisions of the plaintiff's lease with the Potters, the same having been read by the defendants and explained to them by an attorney, nevertheless, on April 2, 1951, entered into the following contract:

> "Ashland, Kan.
> "April 2, 1951
> "I, Virgil Brown, hereby agree to pasture Two hundred Twenty five cows and seven bulls for Clarence Beckerdite and Son for a period of one year in consideration of Three Dollars per month per head beginning Apr. 12, 1951.
> "/s/ Virgil W. Brown
> "/s/ C. D. Beckerdite
> "/s/ Cameron Beckerdite"

Pursuant to the mentioned agreement, defendants moved their cattle onto a portion of the premises occupied by the plaintiff, and paid the pasture rental therein provided. At the expiration of the one year period and on April 15, 1952, plaintiff served a three day notice on defendants to vacate the premises in accordance with G. S. 1949, 61-1304. Defendants refused to vacate, and the plaintiff on April 19, 1952, filed this action to regain possession of his pasture land.

At the outset it may be stated the parties admit the execution and delivery of the mentioned contract dated April 2, 1951. However, defendants contend in both their answer and testimony that it was contemporaneously, orally agreed between the parties that defendants were to have the grazing land for the balance of the term of the lease between the plaintiff and the Potters, which was to expire March 1, 1956, and were also to have approximately 200 acres of farm land for the purpose of planting forage for their cattle, and that the contract should be renewed on a yearly basis until the expiration of the Potter lease. In support of defendants' contention, they offer testimony of prior negotiations and oral agreements leading up to the execution of the aforementioned contract.

Defendant, C. D. Beckerdite, testified that in the early part of January, 1951, he approached plaintiff in an effort to obtain some grass for his cattle. Plaintiff had his own herd of registered Herefords on the ranch and informed defendant that he had no extra pasture at that time. A number of subsequent meetings and conferences were held between the parties, many of the dates being indefinite, but out of those meetings we glean the following facts as testified to by defendant C. D. Beckerdite: Plaintiff stated to him that he was interested in selling his registered herd, and if he did so he would have some extra pasture. Defendant stated he was interested in building up his herd of cattle and that if he (defendant) could secure some pasture he would be interested in buying plaintiff's cattle. Plaintiff set a price on a certain number of his registered herd and, after several conferences between the parties, defendant agreed to buy the cattle on the condition that plaintiff would furnish him pasture for the remainder of his approximate five year lease term between plaintiff and the Potters. Plaintiff informed defendants that under his lease with the Potters he was prohibited from subleasing any portion of the land. Defendants were then shown the Potter lease and read the prohibition contained therein. The plaintiff and defendants then went to Dodge City to consult an attorney with reference to whether plaintiff could sublease any portion of the Potter Ranch to defendants in the event they purchased plaintiff's cattle. The attorney, Mr. Everett Minner, advised defendants that after examining the lease between the plaintiff and Potters, plaintiff could not guarantee to defendants the grass land for the rest of the term of the Potter lease. Defendant testified as follows:

"Q. You consulted Everett Minner about this lease, didn't you?

"A. That's right.

"Q. And you and Mr. Brown went up there and asked Mr. Minner if Mr. Brown could guarantee you this grass for the rest of his term, didn't you?

"A. We did.

"Q. And Mr. Minner told you that he couldn't, that Brown couldn't guarantee you that, didn't he?

"A. Yes.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Didn't Mr. Minner tell you that you'd be crazy to pay out a lot of money on the strength of anything Brown could guarantee?

"A. Yes, he did.

"Q. And after you walked out of Mr. Minner's office, didn't you tell Mr. Brown that the whole deal was off?

"A. I did.

"Q. And that it was some time after that then that you and Brown got together again; isn't that true?

"A. Brown said the only way he could take them would be just on his word and take them by the month.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. I see. As a matter of fact, on April 2, 1951, you had this conversation that you have related with Mr. Brown down to his house and you people then executed this agreement that is in evidence here as having been executed on that date, didn't you?

"A. Yes."

.    .    .    .    .    .    .    .    .    .    .    .    .    .

On April 2, 1951, defendants purchased certain cattle from the plaintiff and entered into the mentioned contract of April 2nd for the grazing land. The defendant, C. D. Beckerdite, was shown the mentioned contract which was marked Exhibit D and testified as follows:

"Q. Mr. Beckerdite, I hand you Plaintiff's Exhibit D and ask you if your signature appears on that instrument?

"A. Yes, sir.

"Q. Mr. Beckerdite, did you have any agreements with Mr. Brown relative to your pasturing this ground subsequent—did you make any agreements after the 2nd of April, 1952?

"A. No.

"Q. All of the agreements that you made with Mr. Brown about this Potter Ranch were either made before or on April 2, 1951, is that correct?

"A. Yes."

.    .    .    .    .    .    .    .    .    .    .    .    .    .

At the conclusion of defendants' evidence, plaintiff interposed a demurrer on the ground that the evidence failed to prove facts sufficient to constitute a defense to the plaintiff's complaint, which

demurrer was by the court sustained, and judgment was entered in favor of the plaintiff for possession of the premises and costs. Defendants filed a motion for a new trial which was overruled, from which ruling and judgment of the trial court the defendants appeal, and first contend that the court erred in sustaining plaintiff's demurrer to the defendants' evidence.

It is an elementary rule of law that where parties carry on oral negotiations and later enter into a written contract covering the subject matter, all prior or contemporaneous negotiations and understandings are deemed to be merged in the contract and must be determined from the writing itself. In a case where the contract is complete, unambiguous and free from uncertainty, parol evidence of prior or contemporaneous agreements or understandings, tending to vary or substitute a new and different contract for the one evidenced by the writing, is inadmissible. (*Cherry v. Joyce*, 168 Kan. 475, 213 P. 2d 1010.)

In *Arensman v. Kitch*, 160 Kan. 783, 789, 165 P. 2d 441, we stated:

"No doctrine is better established or more frequently applied than the one that where parties have carried on negotiations, and have subsequently entered into an agreement in writing with respect to the subject matter covered by such negotiations, the written agreement constitutes the contract between them and determines their rights (*Hudson v. Riley*, 104 Kan. 534, 539, 180 Pac. 198; *Hudson Sate Bank v. Haile*, 130 Kan. 323, 286 Pac. 228; *Grantham v. Hanenkratt Lead & Zinc Co.*, 131 Kan. 535, 542, 292 Pac. 757, and *Continental Supply Co. v. Morgan*, 133 Kan. 121, 123, 298 Pac. 790)."

Then again we reiterated this rule in *McKay v. Clark*, 162 Kan. 653, 659, 178 P. 2d 679:

". . . the general rule that when preliminary negotiations lead to the signing of a written contract, such negotiations are merged into the written document, from which the terms of the contract are to be determined. (12 Am. Jur. 756, 757, and cases cited; 17 C. J. S. 750, 872; Restatement, Contracts, Vol. 2, § 446; *Setchell v. Reed*, 153 Kan. 818, 820, 113 P. 2d 1050; *Arensman v. Kitch*, 160 Kan. 783, 165 P. 2d 441.)"

Other citations to the same effect are *Frogge v. Belford*, 168 Kan. 74, 78, 211 P. 2d 49; 32 C. J. S. 784, § 851; 20 Am. Jur. 958, § 1099; 2 Hatcher's Kansas Digest [Rev. Ed.], Evidence, §§ 128, 135 and 186.

The written contract of April 2nd entered into by the parties appears to be complete and free from ambiguity. There was neither plea nor proof offered of fraud or mutual mistake, nor any attempt to impeach the contract by reason thereof, nor to show that any subsequent agreement was made. Under the circumstances the trial court committed no error in sustaining the demurrer to defendants'

evidence, on the ground that all prior and contemporaneous nego-tiations and understandings were merged in the written contract entered into between the parties, and that any evidence offered to vary or contradict its terms was inadmissible as a defense thereto.

Defendants further argue that an action for forcible entry and detainer is an action criminal in its nature, where a verdict of guilty or not guilty has to be returned by a jury, and they call attention to the statute pertaining thereto (G. S. 1949, 61-1310), and further that the trial court had no right to take the case from the jury and enter judgment in favor of the plaintiff for possession of the premises. The proceeding, while peculiarly statutory and summary in its na-ture, is and, for several centuries, has been a civil action. A de-fendant in such an action found guilty is not a criminal. When the action is begun he is served with a summons (G. S. 1949, 61-1306), as in any other civil action and the case may be tried in his absence (G. S. 1949, 61-1307), as in any other civil action, and the general rules governing trials in civil actions, control. (*Hale v. Brown,* 119 Kan. 303, 239 Pac. 963.) Even if there were any merit to defend-ants' contention that the court erred in failing to submit the case to the jury, such error was invited by the defendants. Before the court sustained the demurrer, it stated to their counsel:

"I'll sustain the demurrer or instruct the jury here to enter a verdict for the plaintiff, either way you want it.

"Mr. Hinkle (defendants' counsel): "I think probably there is no difference in the mechanics of that."

We have held on many occasions that where a party or counsel leads the court into error, he will not be heard to complain on appeal. Certainly defendants should not in this court assume an attitude inconsistent with that taken by them at the trial.

Where counsel for one party causes or invites a particular ruling, such party cannot later argue that such ruling was erroneous. (West's Kansas Digest, Appeal and Error, § 882 (1); 1 Hatcher's Kansas Digest [Rev. Ed.], Appeal and Error, § 440.)

It is apparent from the foregoing that the defendants acquiesced in the court's taking the case from the jury and entering judgment for the plaintiff, and they cannot now complain.

Defendants further contend they were not given proper notice to terminate their tenancy as provided in G. S. 1949, 67-505 and 67-506. The first section provides that tenancies from year to year may be terminated by at least thirty days' notice in writing, given the tenant prior to the expiration of the year. The second section

provides that in cases of tenants occupying and cultivating farms, the notice must fix the termination of the tenancy to take place on the first day of March. We cannot see where these sections are applicable to the instant case. The contract entered into between the parties was nothing more than an agreement that the plaintiff was to pasture a specified number of cattle therein for the defendants, for a period of one year, commencing April 12, 1951, for a consideration. This is not a lease of land, and does not create the relationship of landlord and tenant as contemplated in the Landlords and Tenants Act (G. S. 1949, chapter 67, article 5).

G. S. 1949, 67-509, provides that where the relationship of landlord and tenant does not exist, no notice to quit shall be necessary.

In view of what has been said, other contentions raised by the defendants need not be considered.

The judgment of the trial court is affirmed.

HARVEY, C. J., not participating.