No. 40,435

VIRGIL C. OLIVER and RUTH MARIE OLIVER, *Appellees*, v. CHARLES H. NUGEN and BETTY JO NUGEN, *Appellants*.

(308 P. 2d 132)

Opinion filed March 9, 1957.

*Lewis E. Nugen,* of Wellington, argued the cause, and *W. H. Schwinn,* of Wellington, was with him on the briefs for appellants.

*Earle N. Wright,* of Arkansas City, argued the cause, and *George Templar* and *Ted M. Templar,* both of Arkansas City, were with him on the briefs for appellees.

The opinion of the court was delivered by

SCHROEDER, J.: *This is an action for a declaratory judgment to construe the terms of an installment contract for the sale of real estate.* The defendants appeal from a judgment in favor of the plaintiffs and from all other adverse rulings.

Throughout this opinion the appellants will be refered to as defendants and the appellees will be referred to as plaintiffs.

Material to the disposition of this appeal is a brief summary of the proceedings in the lower court. The record before this court discloses a petition, an answer and a trial to the court on the issues presented. During the trial, and at the close of the plaintiff's case, the defendants demurred to the evidence which the trial court promptly overruled. After the close of the defendants' case judgment was entered favorable to the plaintiffs on all issues. In due course, the defendants' motion for a new trial was overruled and the defendants appealed to this court from the judgment and all adverse rulings and so specified.

The plaintiffs' petition alleges that they were the owners of a certain tract of improved real estate described in the petition and that they entered into an installment real estate sale contract. They then specifically allege as follows:

"That at said time, plaintiff's had an F. H. A. loan and mortgage on said premises with the Albright Title & Trust Company of Newkirk, Oklahoma, which was payable in installments of $44.60 per month, said payments including payment on principal, interest, taxes and insurance. That on or about the . . . day of September, 1953, the plaintiffs agreed to sell said premises to the defendants, and the defendants agreed to buy said premises from the plaintiffs for the sum of $9,000.00 and the parties then and there entered into a written agreement, . . ."

The pertinent portions of the agreement incorporated in the plaintiffs' petition read as follows:

"The parties of the second part agrees to pay to the parties of the first part the full sum of $9,000.00, with interest from date hereof at the rate of 6 per cent per annum, purchase money and interest payable at the office of THE HOME NATIONAL BANK OF ARKANSAS CITY, ARKANSAS CITY, KANSAS, in the following manner, to-wit:

"$2,000.00 cash, the receipt whereof is hereby acknowledged and the balance of $7,000.00 is to be paid at the rate of $65.00 per month, payable on the 1st day of each month hereafter commencing October 1, 1953, and continuing until the full amount of principal and interest are paid. It is understood that $4,-978.23 F. H. A. loan is first lien on the premises, payable in installments of $44.60 per month which first parties agree to pay until they have received $2,-021.77 with interest 6% on the deferred balance from date. When first parties have received $2,021.77 plus interest as aforesaid they agree to assign the balance of said loan to second parties and to deliver deed for their equity.

. . . . . . . . . . . . . . . .

"The parties of the first part agrees to pay all taxes, assessments and impositions which may be levied, assessed or imposed upon said land and premises, and to pay the premiums on insurance policies to the amount of $7,500.00 Fire and $7,500.00 Tornado, to be renewed from time to time covering the life of this agreement, in some responsible insurance company doing business in the state of Kansas.

"It is further agreed that the parties of the second part has the privilege of paying $10.00 or any multiple thereof on the principal at any interest payment time thereby reducing the interest."

The petition then further alleges that in April, 1954, the holder of the F. H. A. mortgage notified the plaintiffs that the F. H. A. payments were increased as of April, 1954, to the sum of $45.98 per month by reason of increase of cost of insurance on the improvements on the property covered by the loan, and further alleged that on or about the 22nd day of November, 1954, the holder of the F. H. A. loan notified the plaintiffs that said payments were increased to the sum of $48.10 per month by reason of the increase in real estate taxes against the property covered by said loan.

The plaintiffs then alleged in their petition that the increase in taxes and insurance was not contemplated by the parties when they executed their original contract and that the same should be paid by the purchasers of said property. They further allege that the defendants claim that all of said increases in said F. H. A. payments and all increases in taxes and insurance on said premises should be absorbed by the plaintiffs out of the principal and interest which is due them under said contract.

The plaintiffs further allege that in the year 1954 they paid out the sum of $79.93 to cover the increased costs of taxes and insurance against said premises for the year 1954 over and above the money available in the F. H. A. insurance and tax account with the Albright Title and Trust Company.

The answer then admits, among other things, the quoted portion of the petition and agreement above, and further admits the in-

crease in F. H. A. payments for taxes and insurance as alleged in the petition. Beyond this the answer alleges that the plaintiffs in their petition are seeking reformation of a written contract duly executed and entered into by both the plaintiffs and the defendants, "the terms of which are clear and plain, and that the plaintiffs are not entitled to a declaratory judgment to vary the express terms of that contract."

Consistent with the foregoing theory expressed in the defendant's answer are allegations concerning the written agreement set out in plaintiffs' petition.

The defendants then proceed to allege "that the word *'second'* was stricken from the contract where reference is made to taxes and insurance and after due contemplation, consideration and thought on the part of all parties concerned the word *'first'* was substituted therefor in accordance with the agreement of the parties prior to the execution of the contract." (Emphasis added.)

The defendants then deny the allegations in the plaintiffs' petition, concerning the existence of a controversy, that is whether or not it was within the contemplation of the parties when they executed the original contract which of the parties should be liable for the increase in taxes and insurance, *"and they specifically allege that the plaintiffs agreed to accept the liability of any increases that might come about in the future."* (Emphasis added.)

The evidence was conflicting. Considered in its most favorable aspects, and with all inferences applicable, the plaintiffs' evidence disclosed that the increase in taxes and insurance was not within the contemplation of the parties. The evidence of the defendants, considered under the same rules, disclosed that the increase in taxes and insurance was within the contemplation of the parties.

Upon all the evidence the trial court made the following findings as set forth in its Journal Entry of Judgment:

"1. That a real controversy exists between the parties and that the court has jurisdiction of the subject matter of this action and of the parties hereto.

"2. The court further finds all of the issues herein generally in favor of the plaintiffs and against the defendants.

"3. The court further finds that the defendants, Charles H. Nugen and Betty Jo Nugen, should not be required to increase their payments beyond the sum of $65.00 per month as provided in the contract of the parties.

"4. The court further finds that out of the proceeds of the payments made by the defendants, that the plaintiffs should pay all payments of principal, interest, taxes and the insurance on the F. H. A. loan in compliance with the terms of said loan and in compliance with F. H. A. Laws and Regulations

relating thereto. That after the payment of such items, the balance of each monthly payment should be applied to the principal and interest owing to the plaintiffs for their equity in the premises.

"5. The court further finds that the sum of $79.93, paid by the plaintiffs on increased taxes and insurance prior to January 1, 1955, should be added to the balance due the plaintiffs on the installment contract of purchase, as of January 1, 1955.

"6. The court further finds that all payments on said real estate contract following January 1, 1955, should be credited on the basis of the F. H. A. payment required in the amount of $48.10 and that the Home National Bank of Arkansas City, Kansas, escrow agent, is authorized and hereby directed to credit all payments by first deducting the amount of the F. H. A. required payment for principal, interest, insurance and taxes, and by applying the balance to the principal and interest due on the equity of the plaintiffs.

"7. The court further finds that the costs in the amount $14.50 should be assessed, one-half to the plaintiffs and one-half to the defendants."

The decree entered by the court upon the foregoing findings was consistent with the findings.

Defendants present their case to this court on the theory that this is a written contract and cannot be altered by parol evidence. In the case of *Brown v. Beckerdite,* 174 Kan. 153, 254 P. 2d 308, this court said:

"It is an elementary rule of law that where parties carry on oral negotiations and later enter into a written contract covering the subject matter, all prior or contemporaneous negotiations and understandings are deemed to be merged in the contract and must be determined from the writing itself. In a case where the contract is complete, unambiguous and free from uncertainty, parol evidence of prior or contemporaneous agreements or understandings, tending to vary or substitute a new and different contract for the one evidenced by the writing, is inadmissable. (*Cherry v. Joyce,* 168 Kan. 475, 213 P. 2d 1010.)" (p. 157)

The doctrine has been well established and frequently applied that where parties have carried on negotiations, and have subsequently entered into an agreement in writing with respect to the subject matter covered by such negotiations, the written agreement constitutes the contract between them and determines their rights. (*Arensman v. Kitch,* 160 Kan. 783, 789, 165 P. 2d 441; *Hudson v. Riley,* 104 Kan. 534, 539, 180 Pac. 198; *Hudson State Bank v. Haile,* 130 Kan. 322, 286 Pac. 228; *Grantham v. Hanenkratt Lead & Zinc Co.,* 131 Kan. 535, 542, 292 Pac. 757; and *Continental Supply Co. v. Morgan,* 133 Kan. 121, 123, 298 Pac. 790; and *McKay v. Clark,* 162 Kan. 653, 659, 178 P. 2d 679.)

It is a judicial function to interpret a written contract which is

free from ambiguity and does not require oral testimony to determine its meaning. Ambiguity in a written instrument does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. (*Klema v. Soukup*, 175 Kan. 775, 267 P. 2d 501.) If a written contract is actually ambiguous concerning a specific matter in the agreement, facts and circumstances existing prior to and contemporaneously with its execution are competent to clarify the intent and purpose of the contract in that regard but not for the purpose of varying and nullifying its clear and positive provisions. (*Maltby v. Sumner*, 169 Kan. 417, 219 P. 2d 395.)

Actually, the case presented to this court on the record makes it unnecessary to determine whether or not the written agreement entered into by the parties for the sale of this real estate was ambiguous. The defendants in the lower court presented their case on the theory that the written contract was ambiguous.

The written agreement was fully set out in the petition. The defendants did not attack the petition by a demurrer, thereby affording the trial judge an opportunity to interpret as a judicial function the written contract to see whether it was free from ambiguity. (See *Klema v. Soukup*, supra.) Instead the defendants filed an answer which presented a mixed theory. Portions of the answer contemplated trial and required the presentation of evidence to prove.

In the opening statement of counsel for defendants the following remark was made:

"This contract maybe is not like a real estate contract, the terms usually provided, but their statement that this situation that exists was not contemplated, we have evidence to disprove that.

"This young man wanted a house, . . . He explained to them that he couldn't pay only $65.00 a month, and he asked them about the taxes, when he would pay them, and they told him the taxes wouldn't be raised, that they were already provided for in this FHA contract, and he asked them, well, what if they would be raised, and Mr. Oliver said, 'Well, if they are raised, I'll take care of any advance in taxes and insurance.'"

Of particular importance is the fact that during the entire trial of the case in the lower court the introduction of parol evidence, that the disputed question was or was not within the contemplation of the parties, was permitted *without objection* on the part of counsel for the defendants. Therefore, in the trial of the case in

the lower court the defendants met the issue head-on, that is, whether or not the increase in taxes and insurance was within the contemplation of the parties when the contract was signed. Thus, the defendants tried the case in the lower court on the theory that the written agreement was ambiguous and required parol evidence to clarify its meaning on the matter in controversy.

The defendants, appellants herein, cannot now be heard to complain that the parol evidence received, without objection, varied a written contract. This court said in *Shanks v. Williams*, 93 Kan. 573, 144 Pac. 1007:

"When the parties to an action have mutually adopted a theory and fully tried their controversy in accordance therewith this court will not on appeal adopt another theory and decide the case in accordance therewith, but will affirm or reverse according as the lack or presence of error shown by the record may require, upon the theory adopted by the parties."

In the recent case of *Demaras v. Smith*, 176 Kan. 416, 271 P. 2d 764, one of the errors urged on appeal was that the trial court erred in the reception of secondary evidence without proper foundation being laid. It was there noted that no objection was made to the evidence on the appropriate ground and it was held that such an objection came too late when first made on appellate review.

Analogous situations have been decided by this court in cases where a change in theory was presented on appellate review, and these cases held that it was too late to change the theory on appeal. (See *Julian v. Oil Co.*, 83 Kan. 127, 131, 109 Pac. 996; *Kolterman v. Atkinson*, 151 Kan. 623, 629, 100 P. 2d 729; *Dewey v. Bobbitt*, 84 Kan. 663, 664, 114 Pac. 865; *Meyer Sanitary Milk Co. v. Casualty Reciprocal Exchange*, 145 Kan. 501, 66 P. 2d 619; *Fidler v. Short*, 118 Kan. 37, 39, 233 Pac. 1022; *Enterprise v. Smith*, 62 Kan. 815, 821, 62 Pac. 324; and *L. N. & S. Rly. Co. v. Curtan*, 51 Kan. 432, 437, 33 Pac. 297.)

Under the circumstances we are now obligated to review this case on the premise that the written contract was ambiguous, since the parties so considered it.

Since the case was tried in the lower court on the theory that the written contract was ambiguous, the trial court was justified in utilizing all possible aids to discover a fair and equitable solution. It is only natural that the parties to a contract know best what was meant by its terms and are the least liable to be mistaken as to the intention of the contract. Where the contract is silent or ambiguous

concerning a vital point incident thereto, parol evidence will be received to aid in its construction. (*Berg v. Scully*, 120 Kan. 637, 245 Pac. 119.)

The record discloses that counsel for each of the parties had seen the particular form contract which was signed by the parties and advised them prior to its execution. This contract form used by the parties had appropriate blank spaces for the variable agreements which could be made. Ordinarily in these contracts, taxes and insurance are to be paid by the buyer, the equitable owner in possession. This provision of the contract was changed from "second" parties to "first" parties. Further, the F. H. A. payments recited in the contract actually included taxes and insurance and it is apparent that these initially came from the $65.00 payment made by the parties of the second part, that is the purchasers—defendants herein. Thus, while the contract called for the sellers to pay the taxes and insurance the purchasers were actually paying them. The contract does not state positively out of which fund the payment for taxes and insurance shall be made, but inferentially, and according to a permissible finding from the oral testimony, which is in conflict, they were to be paid out of the F. H. A. payment. At no place does the contract state the length of time the obligation for taxes and insurance should be imposed upon the sellers.

There is no dispute between the parties that the F. H. A. payments have been increased to $48.10 per month because of increased taxes and insurance costs. Can it be said that the plaintiffs in this contract undertook to pay $48.10 per month when the agreement called for $44.60 or conceivably did the parties agree that regardless of the amount of payments acquired by F. H. A. that $44.60 should be taken out of the $65.00 payment and that the balance should be paid by the plaintiffs personally? No place in the contract is there anything by which plaintiffs agree to take less than the deferred balance of $2,021.77 plus interest at 6% for their equity. No place in the contract is there anything which authorizes the Home National Bank, escrow holder, to deliver the plaintiffs' deed to the defendants until defendants had paid the full deferred sum of $2,021.77 and interest.

To review all the evidence at length in this opinion would serve no purpose. Suffice it to say, that the evidence was conflicting and completely sufficient on either side to support a judgment for either party. Since the lower court resolved this conflict in evidence in

favor of the plaintiffs, it is conclusive upon this court. (*Pease v. Reser,* 122 Kan. 433, 252 Pac. 211; *Hale v. Ziegler,* 180 Kan. 249, 303 P. 2d 190; West's Kansas Digest, App. & E., §§ 1001-1013 incl., and Hatcher's Kansas Digest, App. & E., §§ 495-508 incl.)

It follows that the defendants' demurrer to the evidence of the plaintiffs was properly overruled in the lower court, and that the judgment entered for the plaintiffs upon the findings, heretofore set out at length, should be affirmed. It is so ordered.