(682 P.2d 676)
No. 55,766

Susan L. Yuille & Bernard G. Flaherty, *Appellees*, v. Pester Marketing Company, *Appellant*.

Opinion filed May 17, 1984.

*Curt T. Schneider*, of Schneider & Casebeer, of Coffeyville, for the appellant.

*Kay Y. Rute*, of Kansas Department of Human Resources, for the appellees.

Before Foth, C.J., Parks and Briscoe, JJ.

*Per Curiam:* This is an appeal by an employer, Pester Marketing Company, from a judgment affirming a decision of the Department of Human Resources awarding back pay and statutory penalties to the two claimants, former employees.

Pester Marketing Company has what it calls a "two-part compensation plan" for its gasoline station managers, under which the manager is paid $3.35 per hour up to forty hours per week, $5.03 per hour for overtime hours, and a monthly "bonus." If the station is a convenience store operation, the manager's bonus is $550 per month if the manager works 54 hours per week, and $500 per month if he or she works 60 hours per week. If the station only sells gas and related items, the manager's bonus is $450 if he or she works 54 hours per week and $400 for 60 hours per week. These amounts are the maximum "bonus" a manager may receive; certain cash and inventory shortages, bad checks, and theft losses are deducted from the bonus before the manager receives it.

The claimants in this case are two former managers of Pester stations who had amounts deducted from their "bonuses" and

who filed claims for wages with the Kansas Department of Human Resources. They argued that the deductions from their bonuses constitute deductions from wages prohibited by K.S.A. 44-319 and K.A.R. 49-20-1. The hearing examiner agreed and ordered that Pester pay back wages and penalties in the amount of $1,086.26 to claimant Yuille and $1,029.12 to claimant Flaherty. Pester appealed to the Shawnee district court which affirmed the ruling of the hearing examiner. Pester now appeals to this court.

The trial court's memorandum decision contains a comprehensive discussion of the evidence and applicable law upon which we could not improve. Accordingly we reproduce it here in almost its entirety:

"A District Court, when conducting a review of administrative orders on appeal, must distinguish between questions of law and questions of fact. This distinction is essential for preservation of the separation of powers between the governmental branches. An agency is performing quasi-judicial functions when interpreting rules, regulations or statutes. A court is a higher judicial body and may substitute its judgment for that of an agency on questions of law. Usually a court will give much deference to the agency's interpretation of its regulations. *Hemry v. State Board of Pharmacy*, 232 Kan. 83, 652 P.2d 670 (1982); see Ryan, *Kansas Administrative Law with Federal References*, 24-8 to 24-9 (1982).

"In determining facts, an agency is operating within its area of expertise. The scope of judicial review of agency actions which adjudicate facts, is governed by a [tripartite] test set out in *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 436 P.2d 828 (1968). Recently affirmed in *Hemry*, 232 Kan. at 86, the *Foote* test limits judicial review to a determination whether as a matter of law:

" '(1) an agency acted fraudulently, arbitrarily, or capriciously,

" '(2) the agency order is substantially supported by the evidence, and

" '(3) if the agency action was within their scope of authority.' *Foote*, 200 Kan. at 450.

"The fraudulent, arbitrary and capricious standard is held to require actual fraud or a finding from the record that the agency's action is clearly unreasonable. Absent such a showing, an agency's decision will not be declared fraudulent, arbitrary, or capricious.

"The subject matter of this action is within the scope of the authority of the Secretary of Human Resources. Withholding from wages is regulated by K.S.A. 44-319, and K.S.A. 44-322 grants the secretary power to enforce the wage statutes.

"The remaining leg of the *Foote* test requires a review of the record for us to decide whether the order of the Department of Human Resources is substantially supported by the evidence. The Kansas Supreme Court, in *Kansas Department of Health and Environment v. Banks*, 230 Kan. 169, 172, 630 P.2d 1131 (1981), summarized past decisions and found the substantial evidence test analogous to the directed verdict test. As the Court noted in *Banks, supra*, if relevant evidence exists such that a reasonable person could reach the same result as the agency,

then substantial evidence exists. It matters not, whether the reviewing court would have reached the same decision, but whether the decision reached is supported. *Neeley v. Board of Trustees, Policemen's & Firemen's Retirement System,* 212 Kan. 137, 144, 510 P.2d 160 (1973). We conclude in this case, the decision of the Department is supported by evidence in the record for the reasons set out below.

"The hearing officer made the following finding of fact: [that the pay scheme was as outlined above by this court]. The above finding is substantially supported by evidence. The testimony of Jane Spires, the payroll supervisor for Pester, provides an adequate factual basis to enable a reasonable person to so conclude.

"The defendant also complains of finding of fact number ten as follows:

" '10. That, Respondent's installation of the bonus plan in Kansas was through design, intent and purpose with knowledge of the Kansas Wage Payment Act with intent to circumvent the requirements of the Act.'

"It is this finding which provides the basis for application of the penalty provisions of the act . . . [quotation omitted]. K.S.A. 44-315(*b*) . . . . We note that both a knowing failure to pay and a willful violation are required prior to imposition of a penalty.

"In *Holder v. Kansas Steel Built, Inc.,* 224 Kan. 406, 411, 582 P.2d 244 (1978), the Court held the knowing and willful requirements of K.S.A. 44-315(*b*) to be questions of fact. Since the hearing officer's determination of these facts can be disturbed only if there is a lack of substantial evidence in the record to support his finding, we give careful review to this conclusion. Further, we must note that only the willful violation of the statute is an issue here as the defendant readily admits to having knowingly withheld the disputed amounts from the bonuses.

"The hearing officer, Don W. Bruner, explains in the memorandum attached to the order, the rationale for the finding of a willful violation by Pester. A station manager is held financially responsible for the acts of other employees, as Pester deducts all cash shortages, regardless of employee fault, from the manager's bonus. Most of Pester's employees below manager are paid minimum wage. Any deduction from an employee check would, therefore, violate the federal minimum wage law. Under the former managers' wage plan, the managers were paid a set hourly wage. The amount of pay under the former wage schedule is virtually equal to the sum of the new hourly wage and the maximum possible bonus. The similarity of the gross compensation amount under either plan tends to negate Pester's claim that the purpose for the new wage plan was to provide incentive for profitable operations. The new plan provides no new incentive for managers. The pay plan at issue here has the effect of shifting many of the risks of doing business to the managers without any possibility of their receiving additional compensation. Effectively, Pester now deducts from the manager's compensation, the very items that were not deductible under the prior plan which provided the same amount of gross compensation. This new plan is a transparent attempt to deduct losses from an employee's salary and to avoid the deduction prohibitions of the Kansas Wage Payment Act. These factors amply support the hearing officer's finding number ten, the willful violation of the Kansas Wage Payment Act.

"In summary, we conclude that the findings of fact are not fraudulent, arbitrary

or capricious, are within the scope of the agency's authority; and are substantially supported by the evidence, and the Court affirms the findings of fact of the hearing officer.

"The conclusions of law in an agency order are subject to complete review by the courts. Whether the bonus payments constitute wages is the controlling question of law in this appeal. The defendant acknowledges that if the bonus portion of a manager's compensation is found to be an earned wage, then the deductions made for cash and inventory shortages, robberies, drive-offs, bad checks and credit cards are unlawful under K.S.A. 44-319 and K.A.R. 49-20-1(B).

"Wages are defined by K.S.A. 44-313(c) as:

" '. . . compensation for labor or services rendered by an employee, whether the amount is determined on a time task, piece, commission or *other basis* less authorized withholding and deductions.' (Emphasis added.)

"The 'or other basis' phrase is further defined by K.A.R. 49-20-1(F) as:

" '. . . all agreed compensation for services including, but not limited to, profit sharing and fringe benefits for which the conditions required for entitlement, eligibility, accrual or earning have been met by the employee. Conditions subsequent to such entitlement, eligibility, accrual or earning resulting in a forfeiture or loss of such earned wage shall be ineffective and unenforceable.'

"The defendant claims that the deductions from the bonus are 'conditions precedent' to the bonus becoming a wage and therefore are lawful. The department's position is that the amount of the bonus is fixed and that the deductions are 'conditions subsequent' and prohibited by K.A.R. 40-20-1(F).

"The Kansas Supreme Court in *Sweet v. Stormont Vail Regional Medical Center*, 231 Kan. 604, 647 P.2d 1274 (1982), reviewed a recent line of cases in the Kansas Court of Appeals that dealt with the condition subsequent vs. condition precedent distinction. . . .

. . . . .

"Recovery was denied in *Sweet*. The Court held that the 'proper notice' of termination requirement was a condition that preceded the right to be paid for accrued vacation time upon resignation. This case followed [*Benjamin v. Manpower, Inc. of Wichita*, 3 Kan. App. 2d 657, 600 P.2d 148 (1979)] and [*Richardson v. St. Mary Hospital*, 6 Kan. App. 2d 238, 627 P.2d 1143 (1981)] in noting that an absolute right to payment must exist before an amount in dispute becomes an earned wage payable under the Kansas Wage Payment Act. The Court said:

" 'In determining the rights which accrue under an employment contract, the entitlement thereto or eligibility therefore, the contract controls so long as it is not unreasonable or illegal.' *Sweet*, 231 Kan. at 611.

"They found the claimants had notice of the conditions in the contract and failed to comply with them. Since the conditions, including proper notice, were found necessary to support the hospital's need to be adequately staffed, they were held to be not unreasonable or illegal and were enforced.

"In the present case as in *Sweet*, there is no question of the employment contract's provisions or that the station managers had knowledge of the employer's bonus reduction plan. Both claimants testify that 'excessive' robbery losses, inventory, and money shortages, bad check and credit card charges were to be deducted from their bonuses. The Memorandum of Responsibility, signed

by each claimant, also contains these conditions. It is also undisputed that a bonus, once earned, is a wage.

"The controlling question in this case becomes, according to the rule laid down in *Sweet*, whether the station managers had an absolute right to a bonus prior to the deductions which were made for station losses. If absolute rights in the bonus did exist then the deductions were conditions subsequent and barred by K.A.R. 49-20-1(F). However, if no absolute right existed, then the deductions were conditions precedent and the question becomes whether the contract terms were unreasonable or illegal.

"The amount of the bonus which an employee may receive prior to deductions is not in dispute. These amounts were established based upon the type of the station and the number of hours worked by the station manager. Performance factors such as sales volume and profitability were not considered in setting the bonus amount. Deductions from the bonus amount are governed by the Memorandum of Responsibility that was signed by each station manager and by an agent for Pester. The memorandum states that it, 'does not reflect the other and further terms, conditions and considerations of my employment.' The 'other and further terms' refers to the other documents executed by the station managers and Pester. None of the other documents deal with deductions from the bonus. While the memorandum does not purport to be the complete agreement of the parties, it is the only agreement that deals with the bonus deductions.

"The memorandum states the conditions under which a deduction would be made from the manager's bonus. In three separate places in this two page memorandum, authorization is expressly given to Pester to make the deductions *from* the station manager's 'wages, salary, or other money due' for shortages and losses. Interpretation of contracts was recently discussed and the Kansas Supreme Court reiterated the long standing four corners rule:

" 'Where the provisions of a written contract are clear and unambiguous, there is no occasion for applying rules of construction. In such cases, the contract must be enforced according to its terms so as to give effect to the intention of the parties, and this must be determined from the four corners of the instrument itself.' *Stanfield v. Osborne Industries, Inc.,* 232 Kan. 197, 199, 654 P.2d 917 (1982).

"The Court had previously noted that

" '(a)mbiguity in a written instrument does not arise until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper one. (*Fast v. Kahan,* 206 Kan. 682, 481 P.2d 958.)' *Steel v. Eagle,* 207 Kan. 146, 149, 483 P.2d 1063 (1971).

"We believe that the Memorandum of Responsibility is clear and unambiguous and the term 'other money due' includes the so-called bonus. Pester, therefore, must make its deductions for the shortages and losses from money due the manager. Looking only within the four corners of the Memorandum of Responsibility it is clear that the intention of the parties is to deduct from the monies otherwise owed the manager, the amount of all shortages or losses set out therein. Since deductions were to be made from 'money due' to the manager, there is a clear right to a definite payment that is altered by subsequent conditions, *e.g.*, a subtraction for shortages and losses. These subsequent conditions alter the

employee's right to receive the full wage as defined by law and are therefore in violation of K.S.A. 44-313(c) and K.A.R. 49-20-1(F) and therefore are ineffective and unenforceable. Therefore, this Court holds that the order of the hearing officer, awarding both claimants their withheld monies, should be affirmed.

"The Court believes a further statement should be made relative to the circumstances presented here relative to the reasonableness of the employer's payment concept. Assuming, arguendo, that the deductions, through a more artfully crafted employment agreement were set out as conditions precedent, this Court believes these conditions of employment should be declared unreasonable and unenforceable as violative of the spirit and letter of the Kansas Wage and Hour law. The Kansas Supreme Court mentioned reasonableness as a consideration in construction of employment contracts in *Sweet*, [231 Kan. at 611]. The hospital's purpose for requiring an employee to give specific notice was related to the health and safety of its patients. This purpose was found reasonable.

"Pester claims that the policy behind the deductions from the manager's earnings for shortages and losses is to encourage strict compliance with the company operation and security policies. In reality, the facts demonstrate that the true effect of Pester's policy is to shift a part of its risks of doing business to the pocketbooks of its station managers. While Pester certainly may require all employees to follow company policies, these deductions from the manager's earnings include more than losses and shortages caused by the manager's failure to follow policy, but include losses attributable to other employees and factors outside the control of a station manager. Since it would violate the federal minimum wage statute for Pester to subtract shortages and losses from the minimum wage station employees, they attempt to charge their managers for an employee's dereliction. Likewise, it would violate the same laws to make deductions from a minimum wage paid to the station managers. Under the prior manager wage plan, which provided no 'bonus' but paid managers a higher than minimum hourly wage, these deductions for shortages and losses would have been clearly illegal under the Kansas Wage Payment Act. K.S.A. 44-319(a)(3) and K.A.R. 49-20-1(B).

"It is the Court's view that placing the risk and responsibility for these business losses unaccompanied by increased compensation is unreasonable. For a manager to receive his entire wages under this plan, the station must be run almost flawlessly. Requiring an employee at the station manager level to, in effect, insure a company against robbery, employee theft, dishonored checks and credit cards, is inherently unreasonable and should not be enforced by governmental regulatory agencies or the courts."

We concur in and adopt the foregoing as the opinion of this court.

Affirmed.