NOT DESIGNATED FOR PUBLICATION

Nos. 118,141
118,142

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CORE CASHLESS, LLC,
*Appellant*,

v.

KANSAS DEPARTMENT OF LABOR,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; PAUL C. GURNEY, judge. Opinion filed July 6, 2018.
Affirmed.

*G. Gabriel Zorogastua* and *Daniel D. Owen*, of Polisnelli PC, of Kansas City, Missouri, for appellant.

*Glenn H. Griffeth*, of Kansas Department of Labor, for appellee.

Before GARDNER, P.J., PIERRON, J., and WALKER, S.J.

PER CURIAM:  Core Cashless, LLC appeals the Kansas Department of Labor's decision that it failed to pay earned wages to two of its employees. Finding no error, we affirm.

*Factual and Procedural Background*

Eugene Brooks Lilly and Shannon Lilly, father and daughter, were employed by Core Cashless, LLC (Core LLC) from November 9, 2011, to August 31, 2012. Brooks and Shannon were previously employed by Core LLC's predecessor, Core Cashless, Inc. When employed by Core Cashless, Inc., Brooks' salary was $150,000.

Under the direction of Core LLC's owner, Daniel Owen, Shannon drafted offer letters for each of Core LLC's employment offers, including her own offer letter and her father's. Owen authorized the preparation of the offer letters, and retained the opportunity to review them before presenting them to Brooks and Shannon.

The written offers of employment Brooks and Shannon received in November of 2011 provided in part:

> "The management team of CORE Cashless, LLC is excited to introduce the launch of our new operation. CORE LLC would like to employ you . . . with an annual base salary of $75,000 plus bonuses during the year amounting to a minimum of another $75,000."

This language gives rise to the primary dispute here—whether the parties agreed that Brooks and Shannon would receive a minimum of $75,000 a year in addition to their $75,000 salary, or rather agreed that they would receive an additional $75,000 only if the company had sufficient cash flow.

Those offers also stated: "In order to confirm your employment with CORE Cashless, LLC, we need you to read all of the enclosed documentation and fill out the necessary forms and signature pages." The offer letters closed by stating:

"Regards,

"Dan Owen, Shannon Lilly, Brooks Lilly & Kristi Noyes
"The Directors of CORE Cashless, LLC"

Brooks and Shannon apparently filled out the required paperwork, as it is undisputed that they began working for Core LLC instead of working for Core Cashless, Inc. in November 2011. Thus, they accepted the offer of employment and the parties entered into a binding contract of employment.

Despite the terms of the written contract, Core LLC altered the monthly payments to both Brooks and Shannon during their employment. In January 2012, Core LLC began paying Brooks a monthly salary based upon an annual salary of $150,000. This was done at Brooks' request or demand so he could maintain his then current lifestyle. Core LLC also increased Shannon's monthly wage payments to be based on an $85,000 annual base salary. Two other directors and two other members of management were paid a monthly salary based on a salary of $150,000 annually.

Brooks and Shannon were involuntarily terminated on August 31, 2012. Brooks and Shannon filed claims with the Kansas Department of Labor (KDOL), claiming each of them should have been paid based on a prorated $150,000 annual salary from November until their termination date.

In February 2013, KDOL held a wage claim hearing for each claim. Brooks and Shannon testified, and Core LLC appeared and testified through Owen, who stated he was the owner of Core LLC.

Owen acknowledged the offer letters' bonus provisions, but testified that the offer letters "should have included the phrase that: Those bonuses would be paid as cash flow made it possible. Because that was our understanding." Brooks and Shannon

3

acknowledged their understanding that the bonuses referred to in the offer letters would be paid when the cash flow of Core LLC allowed. But they claimed the bonus amount had to be paid at some point during the year, that they agreed to defer some payments to help the company, and that they had no intention of receiving any less than $150,000 annually. As Brooks testified:

> "A base salary and a minimum bonus was what I agreed to, sir. . . . And the best thing to do would be to have flexibility to make these payments so that we could get things started. So it was my understanding that as cash flow would permit, we would increase these salaries. But under no circumstances did I have any understanding that I would not be paid the minimum bonus. When it would be paid was simply an open issue on the table, to assist in the management of this company."

Shannon believed she was receiving half of the salary she was due in the form of regular and consistent paychecks and that the other half would come later. She agreed to that payment structure to help with Core LLC's cash flow.

The hearing officer issued an Initial Order in March 2013, ordering Core LLC to pay Brooks additional wages of $10,671.35 and to pay Shannon additional wages of $56,439.87.

Core LLC filed petitions for review of the Initial Order. Those petitions included requests for the agency to transcribe the hearings and to permit Core LLC to submit a legal brief. On July 30 and 31, 2013, the agency issued final orders denying review, stating that "the Presiding Officer was correct in not going beyond the *four corners* of the offer to impose conditions that were not there." The agency did not comment on Core LLC's request for transcription or for permission to submit a legal brief.

Core LLC then petitioned for judicial review of the agency's orders. The district court denied those petitions, finding no error. The decision noted that if there was error,

4

that error was harmless because the oral agreement between Core LLC and Brooks and Shannon "concerned when the bonuses were to be paid, and not if they were to be paid." The district court also found that "once the Claimant[s were] fired, [their] remainder salary and any of the unpaid bonus[es] to which [they] had a right became due."

Core LLC then moved for reconsideration of the district court's decisions, which the district court denied. Core LLC timely appealed and the cases have been consolidated on appeal.

*Did the Kansas Department of Labor fail to follow proper procedures?*

We first address Core LLC's contention that KDOL committed two procedural errors that prevented Core LLC from making its full case to the agency: 1) KDOL failed to make findings sufficient for court review; and 2) KDOL improperly denied Core LLC's requests to submit a legal brief and to transcribe the hearing.

*Standard of Review*

The scope of judicial review of a state administrative agency action is defined by the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et. seq. See *Ryser v. State*, 295 Kan 452, 458, 284 P.3d 337 (2012). We review the agency's factual conclusions for substantial evidence based on the record as a whole. *Sierra Club v. Moser*, 298 Kan. 22, 62, 310 P.3d 360 (2013). We exercise unlimited review over questions of law. *In re Tax Appeal of LaFarge Midwest*, 293 Kan. 1039, 1043, 271 P.3d 732 (2012). The burden of proving the invalidity of the agency action rests on the party asserting the invalidity. K.S.A. 2017 Supp. 77-621(a)(1). Here, that burden falls on Core LLC.

*Analysis*

*Did KDOL fail to make sufficient findings?*

Core LLC contends KDOL failed to make sufficient findings and failed to decide certain issues that require resolution, warranting remand. See K.S.A. 2017 Supp. 77-621(c)(3).

An agency is required to issue a written final or initial order that contains conclusions of law, any applicable policy reasons for the decision, and a concise and explicit statement of underlying facts to support its finding. K.S.A. 77-526(c). Findings of fact must be specific enough to allow judicial review of the reasonableness of the order. *Farmland Industries, Inc. v. Kansas Corp. Comm'n*, 25 Kan. App. 2d 849, 852, 971 P.2d 1213 (1999). The facts should be sufficiently clear so that the court does not have to speculate as to the basis of the findings. See *Water District No. 1 v. Kansas Water Authority*, 19 Kan. App. 2d 236, 242, 866 P.2d 1076 (1994). When an agency's findings of fact and conclusions of law are inadequate, appellate review is precluded and the appropriate remedy is to remand for additional findings of fact and conclusions of law. *Jones v. Kansas State University*, 279 Kan. 128, 142, 106 P.3d 10 (2005).

KDOL's Initial Order met all those requirements. The findings of fact described the employment, including the dates of employment, the wording from the employment contract, and the absence of an agreement regarding vacation and holiday time. They also included the specific calculations of how much Brooks and Lilly are owed. As for its statements of law, the Initial Order stated the applicable law and definitions regarding wages and penalties for willfully and knowingly withholding payment. Finally, the Initial Order held that although Core LLC did not willfully withhold payment requiring a penalty, Core LLC and the Lillys entered into a contract, services were provided, and the Lillys were not paid their entitled wages. This is sufficient to meet the requirements of

6

K.S.A. 77-526(c). Detailed reasons for the decision are not required. *In re Tax Appeal of Dillon Stores*, 42 Kan. App. 2d 881, 889, 214 P.3d 707 (2009).

Core LLC also claims that the Initial Order failed to determine two other issues requiring resolution: when the bonuses were to be paid to the Lillys, and whether the Lillys were entitled to bonuses despite their termination before having completed one year of employment. But KDOL resolved those very issues in its Initial Order. That order reflects KDOL's underlying conclusions that Brooks and Shannon were entitled to their bonuses per the contract despite their August 2012 termination, and that the bonuses were to be paid to them at some point during their employment. No more specificity is required. We thus find the agency did not fail to decide an issue requiring resolution.

### *Did KDOL improperly deny the request for briefing and transcription?*

Core LLC also challenges KDOL's tacit denial of its request to submit a legal brief and its request for hearing transcripts. Core LLC specifically requested those items in its appeal of the initial order to the Secretary of Labor. KDOL never directly ruled on either of those requests but instead denied review of the initial order. Core LLC alleges that by doing so, KDOL failed to comply with K.S.A. 2017 Supp. 77-527(d) and (e).

Having reviewed those statutes, we find no violation. Core LLC was not entitled to either of those two requests because the relevant statutes apply only in the event the agency reviews an initial order. K.S.A. 2017 Supp. 77-527(d) specifies that "in reviewing an initial order," an agency "shall consider the agency record or such portions of it as have been designated by the parties." Additionally, the agency "shall afford each party an opportunity to present briefs and may afford each party an opportunity to present oral argument." K.S.A. 2017 Supp. 77-527(e).

Those statutory provisions are not triggered unless an agency elects to review an initial order. An agency is not required to review an initial order. Instead, the agency may determine not to exercise review even when a party requests it. See K.S.A. 2017 Supp. 77-527(a)(2)(A) (permitting an agency to determine not to exercise review). KDOL denied Core LLC's petition for review of the initial order in its "agency final order denying review." That final order did not merely deny relief, but denied review, as Core LLC admits. Thus, KDOL had no duty to allow briefs or to create transcripts pursuant to K.S.A. 2017 Supp. 77-527(d) and (e).

Finding no procedural error, we address the merits of Core LLC's claims below.

*Did KDOL err by not admitting parol evidence?*

Core LLC next contends that KDOL erred by refusing to consider parol evidence that the parties verbally agreed the bonuses were to be paid *only if* sufficient cash flow allowed. Core LLC claims that the offer letter was ambiguous, was not a completely integrated agreement between the parties, and contained a condition precedent. Core LLC also contends that Brooks' and Shannon's statements should be held against them as binding admissions.

The parol evidence rule says that when a contract is complete, unambiguous, and free of uncertainty, evidence of a prior contemporaneous agreement is inadmissible to vary or substitute terms of the agreement. *Branstetter v. Cox*, 209 Kan. 332, 334, 496 P.2d 1345 (1972). The rule prevents a party to a contract from varying the terms of the contract by relying on oral agreements, characterized as negotiations or promises, made during discussions leading up to the contract. A written contract, in most instances, subsumes earlier oral discussions or agreements. *Bouton v. Byers*, 50 Kan. App. 2d 35, 46, 321 P.3d 780 (2014). This is for good reason—the parol evidence rule preserves the integrity of the courts, helps to prevent fraud, dishonesty, and perjury, protects a party

8

against the infirmity of witness memory, and aids judicial convenience by allowing it to determine the parties' intent merely by examining the face of a contract. See generally 11 Williston on Contracts § 33:1 (4th ed. 2012).

*Was the agreement fully integrated?*

We first address Core LLC's claim that the employment contract was not completely integrated, meaning the parties did not intend the writing to be a complete and exclusive statement of the terms of their agreement. A writing generally cannot be contradicted or supplemented by extrinsic evidence when the parties intended the writing to be a complete and exclusive statement of the terms of their agreement. *Cravotta v. Deggingers' Foundry, Inc.*, 42 Kan. App. 2d 700, 707, 215 P.3d 636 (2009). But parol evidence is admissible to prove the parties did not consider the writing a complete and accurate integration of a contract. *Branstetter*, 209 Kan. at 334-36 (discussing numerous cases applying the rule).

We find no relevant evidence on point. Core LLC does not show testimony by either party indicating that at the time the employment offers were made and were accepted in November of 2011, the parties did not intend for the contract to be a final expression of their agreement. No evidence suggests that the parties did not assent to it as a complete and accurate full agreement at that time, or that the parties agreed in November of 2011 that the contract would not take effect until and unless some future event occurred. Core LLC fails to show any facts of record that support its assertion that the employment contract was not fully integrated.

*Did the agreement contain a condition precedent?*

Perhaps in anticipation of that outcome, Core LLC claims that even if the offer letters were fully integrated, the oral cash flow requirement was a condition precedent,

9

citing *Branstetter* and *Money v. Ft. Hays State Univ. Endowment Ass'n*, 31 Kan. App. 2d 322, 64 P.3d 458 (2003). Both of those cases, however, relate to conditional delivery of a contract. Each case permitted evidence of an oral agreement to show the conditional nature of the contract—that none of the writing was to take effect until and unless some event not specified in the contract occurred. In *Branstetter*, that event was the husband's agreement. The court admitted parol evidence to show conditional delivery—that the wife had signed a written real estate purchase contract but it was not to be effective unless her husband acquiesced. 209 Kan. at 336. Similarly, in *Money*, that event was a committee's approval of the sale. The court found that the seller had adequately communicated the conditional aspect of the land sale at the auction, and thus failure of that condition made the agreement unenforceable. 31 Kan. app. 2d at 327. Those events precluded the contracts from being completely integrated. Thus where conditional delivery is shown, the agreement is not fully integrated.

But in neither of those cases was evidence admitted to vary the specific terms of the contract. That would not have been allowed:

> "Where as here the original parties are the ones concerned and the evidence is offered not to vary the specific terms of the contract but to prove the parties did not assent to it as a complete and accurate integration of a contract the evidence is clearly admissible." *Branstetter*, 209 Kan. at 335.

Thus evidence is admissible for the purpose of showing "the circumstances of the alleged conditional delivery of the contract, [but not to] vary, alter or change the terms of the contract as written." *Malir v. Maixner*, 174 Kan. 26, 28-29, 254 P.2d 282 (1953) (permitting evidence that the contract was not to be considered as a delivered present contract until the other parties in interest joined in a deed to the property).

Core LLC asks us to do the very thing these cases prohibit—to change the specific terms of the contract as written. Even when a contract is ambiguous, however, "the taking of parol[] evidence is designed to allow the court to divine the intent of the parties beyond the words of the contract itself, not to alter the contract. See *Oliver v. Nugen*, 180 Kan. 823, 828, 308 P.2d 132 (1957) (parol[ ] evidence competent to clarify intent and purpose of contract, not for nullifying it)." *In re Marriage of Johnston*, 54 Kan. App. 2d 516, 526, 402 P.3d 570 (2017), *rev. denied* 307 Kan. 987 (2018).

The written agreement states that Brooks and Shannon would each be paid *a minimum* $75,000 bonus in addition to the salary of $75,000. The written agreement does not condition the receipt of that bonus on any event, including the availability of cash flow. Conditioning the bonus on the availability of cash flow would contradict the terms of the written agreement. Owen's interpretation would mean that the Lillys would be paid *a maximum* of $75,000 in addition to their salary. Therefore, the parol evidence rule would not allow consideration of the oral agreement even if Brooks and Shannon had testified to it, as Owen did. Thus, it was not an error of law for the hearing officer to review only the four corners of the written agreement and to not consider the contradictory oral terms.

*Did KDOL improperly disregard the Lillys' admissions?*

Core LLC also claims that the district court erred in disregarding the following admissions by the Lillys about a cash flow requirement:

- Shannon's testimony that bonuses were to be paid when cash flow made it possible for the company; and
- Brooks' statement in his February 19, 2013 letter to the hearing officer that bonuses were to be paid when cash flow made it possible.

11

Core LLC claims that KDOL acted contrary to law by disregarding evidence of the parties' intent.

Core LLC relies on the rule that party admissions are the strongest kind of evidence:

> "This court has frequently recognized that admissions made by a party are the strongest kind of evidence. The proposition of law to be applied under these circumstances has been stated as follows: A verdict cannot be upset if there is any evidence in the record to support it, where such issue is presented without complicating factors, but such rule yields to the impact of admissions made by a party in his testimony while a witness in the case, and such admissions are binding and conclusive upon him if uncontradicted or unexplained, whether such admissions are elicited on direct examination or on cross-examination of the party (*Hallett v. Stone*, 216 Kan. 568, 534 P.2d 232 [1975]). Admissions derived from a party's own conduct may likewise be so considered." *Carnegie v. Gage Furniture, Inc.*, 217 Kan. 564, 571-72, 538 P.2d 659 (1975).

See *Hiniger v. Judy*, 194 Kan. 155, 165, 398 P.2d 305 (1965).

We agree that generally, party admissions are binding and conclusive if uncontradicted or unexplained. *Long v. Deere & Co.*, 238 Kan. 766, 784, 715 P.2d 1023 (1986). But here, the Lillys' explanations for the alleged admissions detract from their binding effect and conclusiveness. Both of the statements alleged to be admissions were accompanied by an explanation that the payment of the bonuses was deferred to assist the company in its early stages. Neither statement could reasonably be construed to mean that either of the Lillys agreed to be paid less than $150,000 a year. Instead, the accompanying explanation clarifies and explains that the Lillys never agreed to waive the bonus payments. They agreed to help their employer by being flexible only as to when they received the bonus but intended to receive at least $75,000 annually in addition to their $75,000 base salary.

12

As *Carnegie* and *Hinigar* state, a party's conduct may also be considered an admission. Under the facts of record, KDOL could have viewed Owen's conduct, rather than the Lillys' statements, as an admission. Two or three months after entering into the employment contract, Brooks told Owen that he could not live on $75,000 and needed the full $150,000. Owen complied and began paying Brooks a monthly salary based on an annual salary of $150,000 a year. Owen's conduct in paying Brooks that full salary, at a time Owen contends Core LLC's cash flow did not permit it, could be viewed as an admission against Owen's interest.

KDOL considered the competing evidence, including all the alleged admissions, and inferences arising from them. The hearing officer chose to accept Brooks' and Shannon's testimony, and that decision is supported by substantial evidence. Whether we would have done the same had we been the hearing officer matters not. KDOL was not legally bound to consider the Lillys' statements or Owen's conduct as binding and conclusive evidence of the parties' intent.

Neither are we. We determine the parties' intent from the plain language of the agreement, unless its terms are ambiguous. *In re Estate of McLeish*, 49 Kan. App. 2d 246, 255, 307 P.3d 221 (2013). Because we review the agency's factual determinations for substantial evidence, we cannot reweigh the evidence or substitute our opinions on the evidence for the factual determinations of the agency. *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014); see K.S.A. 2017 Supp. 77-621(d). We thus reject Core LLC's invitation for us to reweigh the evidence and find the parol evidence given by Owen to be controlling.

*Did mutual mistake prevent formation of a contract?*

We next consider Core LLC's contention that even if the parol evidence rule applies, the Lillys' admissions show the parties made a mistake by omitting language

13

about the cash flow requirement for the bonuses. But it cites only *In re Boyd's Estate*, 394 Pa. 225, 146 A.2d 816 (1958)—a 1958 Pennsylvania case which we find unpersuasive—and makes no attempt to apply the law to our facts. The scant briefing of this matter borders on abandonment of this issue.

The Kansas rule pertaining to the admission of parol evidence in the case of mutual mistake follows:

> "In order for parties to form a binding contract, there must be a meeting of the minds as to all essential terms. [Citation omitted.] As between the original parties to a contract parol evidence to show mutual mistake may be introduced in an action to show the nonexistence of a binding contract." *Sidwell Oil & Gas Co. v. Loyd*, 230 Kan. 77, 79, 630 P.2d 1107 (1981).

Thus parol evidence is admissible to show a mutual mistake which prevented the consummation of a contract that purports to be evidenced by a written instrument. *Sidwell*, 230 Kan. at 80.

But Core LLC presents no evidence of mutual mistake that could show the nonexistence of a binding contract. At best, Owen believed that part of his agreement was to pay the Lillys the additional $75,000 only in the event he determined that Core LLC's cash flow permitted it; the Lillys believed instead that that part of the agreement was for Core LLC to pay them the additional $75,000 at some point during the year. Core LLC makes no effort to show that the mistake went to an essential term of the contract or to show the absence of a meeting of the minds, as is necessary under this theory to prove the nonexistence of a binding contract.

14

*Was the agreement ambiguous?*

We next address Core LLC's contention that the employment agreement was ambiguous. Parol evidence may be used when a written contract's language is ambiguous. *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013). Whether the language of a contract is ambiguous presents a question of law for the court. 296 Kan. at 964.

When interpreting written contracts, the primary rule of construction is to ascertain the parties' intent. But if the terms of the contract are unambiguous, the parties' intent is to be ascertained from the contract language without applying rules of construction. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014). We will not find a written instrument to be ambiguous unless two or more meanings can reasonably be construed from the contract. The court will not strain to find an ambiguity where, in common sense, there is none. *Iron Mound v. Nueterra Healthcare Management*, 298 Kan. 412, 418, 420, 313 P.3d 808 (2013).

In determining whether an instrument is ambiguous, "we strive to determine the document's meaning and the parties' intent from within its four corners; we consider, construe, and harmonize the entire instrument without isolating any one particular sentence or provision." *Central Natural Resources v. Davis Operating Co.*, 288 Kan. 234, 244-45, 201 P.3d 680 (2009); see *Gore v. Beren*, 254 Kan. 418, 427, 867 P.2d 330 (1994). Ambiguity in a contract is determined from "'a natural and reasonable interpretation of its language'" not from a consideration of evidence outside the four corners of the document. 254 Kan. at 427.

When we find ambiguity, we admit parol evidence to supplement but not to contradict terms in the written agreement.

15

"If a written contract is actually ambiguous concerning a specific matter in the agreement, facts and circumstances existing prior to and contemporaneously with its execution are competent to clarify the intent and purpose of the contract in that regard but not for the purpose of varying and nullifying its clear and positive provisions. Maltby v. Sumner, 169 Kan. 417, 219 P.2d 395." *Oliver v. Nugen*, 180 Kan. 823, 828, 308 P.2d 132 (1957).

"The law is well settled that where ambiguity exists in a document evidence is admissible as an aid to its interpretation." *Mobile Acres, Inc. v. Kurata*, 211 Kan. 833, 839, 508 P.2d 889 (1973).

Core LLC contends the following language from the employment contract is ambiguous: "CORE LLC would like to employ you . . . with an annual base salary of $75,000 plus bonuses during the year amounting to a minimum of another $75,000." But Core LLC does not suggest any natural and reasonable alternative meaning for the phrase "plus bonuses during the year amounting to a minimum of another $75,000." Nor do we find the meaning of that phrase to be uncertain.

Instead, Core LLC contends the contract is ambiguous because of what it does not state: that the Lillys would receive a $150,000 salary, that the Lillys were entitled to bonuses regardless of how long they worked for Core LLC, or what would happen if the Lillys were terminated before working for a full year. But a court does not determine ambiguity by focusing on terms a contract does not include. To the contrary, we determine ambiguity in a contract from a natural and reasonable interpretation of the language in the contract, not from a consideration of evidence outside the four corners of the document. See *Gore*, 254 Kan. at 427.

The only specific words that Core LLC suggests are ambiguous are "during the year." We find that language to be unambiguous. The contract clearly and specifically provides that the Lillys were each to receive an annual bonus of at least $75,000, in

16

addition to their salary of $75,000. That additional $75,000 was to be paid sometime during the 365 days after they began working for Core LLC. This statement was not conditioned or otherwise limited; thus, the hearing officer could not properly have considered evidence of a prior or contemporaneous oral agreement which would limit or conditions the parties' agreement stated in their written employment contract.

Core LLC generally claims that the contract is ambiguous as to whether Brooks and Shannon are entitled to bonuses at all. It claims that the testimony from the parties regarding their flexibility on the remaining $75,000 of the contract indicates that it was at least questionable whether they were entitled to receive that $75,000. But the contract clearly and specifically states that Brooks and Shannon shall each receive a minimum bonus of $75,000 annually. We find no ambiguity.

*Harmless Error*

Even if we had found error in denying parol evidence, we would consider that error to be harmless. See K.S.A. 2017 Supp. 77-621(e); *Sierra Club*, 298 Kan. at 47. Any error is harmless here because the oral cash flow bonus provision violates K.S.A. 2017 Supp. 44-314(a) and K.S.A. 2017 Supp. 44-319(a)(3), so is unenforceable.

Every employer must pay all wages due to an employee at least monthly, on regular paydays. K.S.A. 2017 Supp. 44-314(a). An employer may not "withhold, deduct or divert any portion of an employee's wages unless: . . . the employer has a signed authorization by the employee for deductions for a lawful purpose accruing to the benefit of the employee." K.S.A. 2017 Supp. 44-319(a)(3). The regulations specify certain deductions that do not "[accrue] to the benefit of the employee" and cannot be made under any circumstances, even with the written consent of the employee. One of those is a deduction for cash shortages. K.A.R. 49-20-1(a)(2)(A). We have previously held that the payment of a monthly bonus to managers that was reduced by the amount of register

17

shortages of their employees was an unlawful "condition subsequent" to payment of wages. *Yuille v. Pester Marketing Co.*, 9 Kan. App. 2d 464, 468-69, 682 P.3d 676 (1984). Thus, even if such dollar-for-dollar deductions were set out as a condition precedent through an artfully crafted employment agreement, these conditions would violate both the letter and spirit of the Kansas Wage Payment Act (KWPA). *Yuille*, 9 Kan. App. 2d at 469.

The bonuses here are wages under the KWPA. Any agreement to defer payment of wages to allow Core LLC to meet other obligations without additional consideration, even if agreed upon, is unreasonable and unenforceable and contravenes the intent of the KWPA. See *Yuille*, 9 Kan. App. 2d at 469. Failure to pay wages when due, even if agreed upon by the parties, violates K.S.A. 2017 Supp. 44-314(a) and K.S.A. 2017 Supp. 44-319(a). *Beckman v. Kansas Dept. of Human Resources*, 30 Kan. App. 2d 606, 610, 43 P.3d 891 (2002) (finding employee's oral agreement to defer part of his earned wages to be illegal).

The Lillys' oral agreement, if any, to defer part of their salary until Core LLC was in a better cash flow condition would have benefitted Core LLC but would not have benefitted the Lillys. Thus any such agreement was not for a lawful purpose accruing to the benefit of the employee, as is required by the KWPA. See K.S.A. 2017 Supp. 44-319(a)(3). We enforce the written, legal provision of the employment contract, meaning that Brooks and Shannon are entitled to prorated amounts based on an annual salary of $75,000 and an annual bonus amounting to $75,000. But the other purported provision, which acts to withhold part of Brooks' and Shannon's wages until someone determines that the company has sufficient cash flow to pay them, is unenforceable for the same reasons stated in *Beckman*.

*Did KDOL err by determining that the bonuses were wages under the Kansas Wage Payment Act?*

Core LLC next contends that the agency wrongly categorized the bonuses as wages, and that the Lillys were not entitled to the bonuses at the time their employment was terminated.

*Analysis*

Wages are defined as:

"compensation for labor or services rendered by an employee, whether the amount is determined on a time task, piece, commission or other basis less authorized withholding and deductions." K.S.A. 2017 Supp. 44-313(c).

The "or other basis" phrase is defined as:

"all agreed compensation for services for which the conditions required for entitlement, eligibility, accrual or earning have been met by the employee. Such compensation may include, but is not limited to, profit sharing, finance benefits, or compensation due as a result of services performed under an employment contract that has a wage rate required or implied by state or federal law. Conditions subsequent to such entitlement, eligibility, accrual or earning resulting in a forfeiture or loss of such earned wage shall be ineffective and unenforceable." K.A.R. 49-20-1(d).

Before an employee has an earned wage payable under the KWPA, there must be an absolute right to payment. *Yuille*, 9 Kan. App. 2d at 467. Core LLC contends the Lillys did not have an absolute right to payment of the bonuses, so the bonuses were not wages.

19

Here, as in *Yuille*, the Lillys' employment contracts gave the employees an express and unambiguous right to payment of the bonuses. No contingency on payment of the bonuses is stated in those contracts. The only alleged contingency on payment of the bonuses arises from parol evidence and relates to Core LLC's cash flow, but that contingency does not depend on anything the Lillys did or failed to do. Although the contract refers to the additional $75,000 as a bonus instead of as salary or wages, the contract does not specify that the Lillys had to do anything but accept the offer of employment to earn that bonus. Conditioning the Lillys' right to payment on the availability of cash flow would be unenforceable because it alters Brooks' and Shannon's right to receive their full wage, violating K.S.A. 2017 Supp. 44-313(c) and K.A.R. 49-20-1(d). See *Yuille*, 9 Kan. App. 2d at 468-69.

Core LLC also contends that even if the bonus is considered wages, the Lillys were not entitled to payment of the bonus because they were terminated—it asserts continued employment was a condition precedent to their entitlement to the bonus. Core LLC relies on *Morton Bldgs., Inc. v. Department of Human Resources*, 10 Kan. App. 2d 197, 695 P.2d 450 (1985). There, we held that an employee was not entitled to profit sharing benefits because the condition precedent stated in the company's written contract—that employees must be on the payroll at the date of profit distribution—had not been satisfied. 10 Kan. App. 2d at 200. Core LLC seeks to apply that holding here, arguing that because the condition precedent of continued employment did not exist at the time the Lillys were terminated, they were not entitled to a bonus.

We find *Morton* distinguishable from the facts here because no condition precedent is stated in the Lillys' employment contracts. The hearing officer properly disregarded any allegations of a condition precedent because it was not within the four corners of the unambiguous contract. Cases establish that under Kansas law, employers may require continued employment as a condition precedent to an employee's entitlement to various benefits. Those include profit sharing benefits, *Morton Bldgs.*, 10 Kan. App.

20

2d at 200, stock option benefits, *Weir v. Anaconda Co.*, 773 F.2d 1073, 1085 (10th Cir. 1985), and certain paid time off, *Richardson v. St. Mary Hospital*, 6 Kan. App. 2d 238, 241-42, 627 P.2d 1143 (1981). And the court implied in *Weinzirl v. The Wells Group, Inc.*, 234 Kan. 1016, 1020-21, 677 P.2d 1004 (1984), that conditioning commissions on continued employment would have been permissible had the contract actually imposed such a condition precedent. But unlike the contracts in the cases above, the relevant contracts here do no such thing.

*Conclusion*

We find no error of law in KDOL's decision. Substantial evidence supports its conclusion that the additional $75,000 in bonuses was due and owing as wages. We find the agency's decision is not arbitrary, capricious, or otherwise unreasonable.

Affirmed.